## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| VAUGHN FEIGHAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 1:20cv3759 (BAH) |
| | ) |
| RESOURCE SYSTEMS GROUP, INC. | ) |
| t/a DAVERSA PARTNERS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF'S PRETRIAL MOTION IN LIMINE

Pursuant to the Court's Minute Order of April 13, 2023, Plaintiff Vaughn Feighan, by counsel, files this Pretrial Motion in Limine, along with a Memorandum in support of this Motion. For the reasons stated in the Memorandum, the Court is asked to grant this Motion in all respects and enter the proposed Order that also accompanies this Motion.[1]

## CERTIFICATION

Per Local Civil Rule 7(m), undersigned counsel conferred with counsel for Defendant on June 5, 2023 prior to filing this Motion. Defense counsel does not consent to the relief sought.

---

[1] Because undersigned counsel is not privy at this time to all of the evidence and testimony that Defendant intends to proffer at trial, undersigned counsel reserves the right to request permission from the Court to file additional motions in limine as appropriate.

June 5, 2023                                Respectfully submitted,

                                           */S/ CARLA D. BROWN*
                                           Carla D. Brown, DC Bar No. 474097
                                           Peter  C. Cohen, DC Bar No. 413247
                                           CHARLSON BREDEHOFT COHEN
                                             BROWN & NADELHAFT, P.C.
                                           11260 Roger Bacon Drive, Suite 201
                                           Reston, Virginia 20190
                                           cbrown@cbcblaw.com
                                           (703) 318-6800 Telephone
                                           (703) 318-6808 Facsimile

                                           *Counsel for Plaintiff, Vaughn Feighan*

## CERTIFICATE OF SERVICE

I hereby certify on the 5th day of June 2023, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Stephen M. Silvestri, Esq.
Charles J. Kresslein, Esq.
JACKSON LEWIS P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, Maryland 21209
Phone:  (410) 415-2000
Fax:  (410) 415-2001
Stephen.silvestri@jacksonlewis.com
Charles.kresslein@jacksonlewis.com

*Counsel for Defendant Resource Systems Group Inc. t/a Daversa Partners*

John W. Cannavino, Esq.
CUMMINGS & LOCKWOOD LLC
6 Landmark Square
Stamford, CT  06901
Phone:  (203) 351-4447
Fax: (203) 708-3849
jcannavino@cl-law.com

*Counsel for Defendant Resource Systems Group Inc. t/a Daversa Partners*

*/S/ CARLA D. BROWN*
Carla D. Brown, DC Bar No. 474097
CHARLSON BREDEHOFT COHEN
  BROWN & NADELHAFT, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
cbrown@cbcblaw.com
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Plaintiff, Vaughn Feighan*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

VAUGHN FEIGHAN     )
             )
  Plaintiff,       )
             )
  v.         )  C.A. No. 1:20cv3759 (BAH)
             )
RESOURCE SYSTEMS GROUP, INC. )
 t/a DAVERSA PARTNERS,   )
             )
  Defendant.      )
             )

# MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S PRETRIAL MOTION IN LIMINE

June 5, 2023

Carla D. Brown, DC Bar No. 474097
Peter  C. Cohen, DC Bar No. 413247
CHARLSON BREDEHOFT COHEN
 BROWN & NADELHAFT, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
cbrown@cbcblaw.com
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Plaintiff, Vaughn Feighan*

# TABLE OF CONTENTS

SUMMARY OF MOTION ............................................................................................1

ARGUMENT .........................................................................................................4

I.      COUNT ONE: MR. FEIGHAN'S DCHRA DISCRIMINATION CLAIM ......4

A.    Mr. Brown's Creation Of A Hostile Work Environment
For Mr. Feighan Is Not A Subject Of Dispute At Trial ..............................4

1.    Daversa should not be permitted to proffer
evidence at trial disputing or challenging
the existence of a hostile work environment...................................4

2.    How Mr. Feighan came to be supervised
by Mr. Brown is irrelevant to this case ...........................................6

3.    How Daversa handled the COVID
pandemic is irrelevant to this case ..................................................7

4.    How Mr. Brown treated employees other
than Mr. Feighan is irrelevant to Count
One and this case ............................................................................7

5.    What employees thought of Mr. Brown, or
what their experiences were in working
with him, are irrelevant to Count One
and this case ....................................................................................8

6.    Mr. Feighan's private texts with his romantic
partner concerning private matters between
them, and texts where Mr. Feighan references
his private sex life, are irrelevant to Count One
and this case ..................................................................................10

7.    Whether or not Mr. Feighan smoked marijuana,
or used drugs with co-workers during his employment
with Daversa, is irrelevant to Count One and this case ................12

B.     On The Question Of Whether Mr. Feighan
Suffered A "Tangible Employment Action"..............................................13

    1.    Daversa should not be permitted to proffer
evidence disputing or challenging the fact
that Mr. Feighan did the work that resulted
in the closing of nine executive placements
that form the basis of his bonus claim ...........................................14

    2.    Daversa should not be permitted to proffer
evidence disputing or challenging the fact
that Mr. Brown's harassment of Mr. Feighan
resulted in Mr. Feighan's constructive discharge .........................15

    3.    Daversa should not be permitted to proffer
evidence at trial on whether other irrelevant
changes occurred to Mr. Feighan's employment..........................18

C.     The Two Elements of Daversa's *Faragher/Ellerth* Defense ....................19

    1.    On the first element of *Faragher/Ellerth*,
general self-serving testimony by Daversa
managers on the company's "professional
environment" and  "workplace culture"
and the CEO's "commitment to diversity"
are irrelevant to a *Faragher/Ellerth* defense.................................19

    2.    On the first element of *Faragher/Ellerth*, the issue
before the jury is whether Daversa properly trained
the harasser in this case – Mr. Brown – to refrain from
sexual harassment, not whether Daversa succeeded....................23
in properly training other Partners not connected
to this lawsuit to refrain from sexual harassment

    3.    On the second element of *Faragher/Ellerth*,
which non-management employees Mr.
Feighan did not report Mr. Brown's
harassment to is irrelevant to this case...........................................26

ii

II. COUNT EIGHT: MR. FEIGHAN'S INTENTIONAL INFLICTION CLAIM ...........27

      A.      Daversa Should Not Be Permitted To Proffer Evidence
              At Trial Disputing Or Challenging The First Liability
              Element Of An IIED Claim – That Mr. Brown's Conduct
              Towards Mr. Feighan Was "Extreme Or Outrageous"............................28

      B.      Daversa Has Not Contested The Remaining Liability
              Elements Of An IIED claim ("Intentionally Or Recklessly
              Caused The Plaintiff Severe Emotional Distress")................................. 30

III.    "FAILURE TO MITIGATE" ECONOMIC LOSSES IS NOT AN ISSUE
      IN THE CASE ...................................................................................................31

IV.    DAVERSA SHOULD NOT BE PERMITTED TO PROFFER MR. FEIGHAN'S
      SETTLEMENT WITH MR. BROWN, OR SETTLEMENT-RELATED
      COMMUNICATIONS, TO THE JURY .............................................................31

CONCLUSION..................................................................................................................36

## SUMMARY OF MOTION

Pursuant to the Court's Minute Order of April 13, 2023, Plaintiff Vaughn Feighan ("Mr. Feighan"), through counsel, files this Memorandum in Support of Plaintiff's Pretrial Motion in Limine.

In his Amended Complaint, Mr. Feighan asserted the following claims against Defendant Resource Systems Group Inc. t/a Daversa Partners ("Daversa"): Count One (hostile work environment in violation of the District of Columbia Human Rights Acts) ("DCHRA"); Count Four (battery); Counts Five and Six (negligent supervision); Count Seven (violation of the District of Columbia Wage Payment and Wage Collection Law) ("DCWPCL"); Count Eight (intentional infliction of emotional distress); and Count Nine (retaliation in violation of the DCHRA).

In its Memorandum Opinion filed March 30, 2023 [ECF No. 46],[1] *Feighan v. Res. Sys. Grp.*, 2023 U.S. Dist. LEXIS 55380 (D.D.C. 2023), the Court dismissed Count Four (battery) and Count Nine (DCHRA retaliation) and scheduled the remaining Counts for trial by jury beginning September 11, 2023.  As explained more fully below, the Court is asked to enter an order that precludes Daversa from proffering evidence at trial that ostensibly seeks to:

- Dispute or challenge the fact that former defendant Bruce Brown ("Mr. Brown") created a hostile work environment for Mr. Feighan on the basis of sexual orientation (admitted by Daversa);

- Show how Mr. Feighan came to be supervised by Mr. Brown (irrelevant);

- Show how Daversa handled the COVID pandemic (irrelevant);

- Show how Mr. Brown treated employees other than Mr. Feighan (irrelevant);

- Show what employees thought of Mr. Brown as a supervisor or co-worker and/or what their experiences were in working with him (irrelevant);

---

[1] "ECF" refers to the filings reflected on the ECF docket for the case.

- Show Mr. Feighan's private texts with any romantic partner, including Bart Panarese, concerning private matters between them (irrelevant);

- Disclose private texts where Mr. Feighan makes reference to his private sex life (irrelevant);

- Show whether Mr. Feighan smoked marijuana or used drugs with others including co-workers at Daversa (irrelevant);

- Dispute or challenge the fact (admitted by Daversa) that Mr. Feighan did the work that resulted in the closing of nine executive placements that form the basis of his bonus claim; specifically, Alation, Big Health, BirdEye, Constellation, PeerNova, Redmarlin (two), Testim, and Zycada;

- Dispute or challenge the fact (admitted by Daversa) that Mr. Brown's harassment of Mr. Feighan resulted in Mr. Feighan's constructive discharge;

- Show Daversa did not impose adverse actions upon Mr. Feighan having no connection or relevance to the only two "tangible employment actions" at issue in the case (denial of bonuses and constructive discharge), including that Daversa did not fire Mr. Feighan, deny him a promotion, reassign or transfer him, or reduce or increase his salary;

- Show (ostensibly) that Daversa has a "professional work environment" and/or what its "workplace culture" is and/or what level of commitment its CEO (Paul Daversa) supposedly has to "diversity" and in a discrimination-free work environment (all irrelevant);

- Show how Daversa supposedly trained Partners other than Mr. Brown in matters of sexual harassment and discrimination in the workplace (irrelevant);

- Show whether Mr. Feighan reported Mr. Brown's harassment to non-supervisors and/or non-managers at Daversa and/or others not specifically identified in Daversa's harassment policy (irrelevant);

- Dispute or challenge the three liability elements of Mr. Feighan's claim of intentional infliction of emotional distress (all admitted or not contested by Daversa, with the one remaining issue being whether Mr. Brown acted within or outside the scope of employment);

- Show Mr. Feighan did not mitigate his damages (not in issue);

- Use Mr. Feighan's settlement with Mr. Brown (and related settlement communications) to avoid being found liable for any Count being tried to the jury (not allowed by Federal Rule of Evidence 408);

- Use Mr. Feighan's settlement with Mr. Brown (and related settlement communications) to persuade the jury to award a lesser monetary amount against it (not allowed by Federal Rule of Evidence 408); and

- Use Mr. Feighan's settlement with Mr. Brown (and related settlement communications) as the basis for impeaching a testifying witness (including Mr. Brown) by a prior inconsistent statement or contradiction (not allowed by Federal Rule of Evidence 408).

In addition, the Court is asked to instruct the jury, after it is empaneled, to accept as established facts that:

- Mr. Brown subjected Mr. Feighan to a hostile work environment based on sexual orientation; more specifically, Mr. Brown subjected Mr. Feighan to discriminatory intimidation, ridicule, and insult on the basis of sexual orientation that was severe and/or pervasive, altered the conditions of Mr. Feighan's employment, and created an abusive working environment for Mr. Feighan;

- Mr. Feighan searched for, won, and closed nine executive placements for Daversa, specifically, Alation, Big Health, BirdEye, Constellation, PeerNova, Redmarlin (two), Testim, and Zycada;

- The abusive work environment to which Mr. Feighan was subjected by Mr. Brown resulted in Mr. Feighan's constructive discharge, that is, Mr. Brown's abuse of Mr. Feighan became so intolerable that Mr. Feighan's resignation qualified as a fitting response; and

- Mr. Brown's conduct towards Mr. Feighan was extreme and/or outrageous and he (Mr. Brown) intentionally and/or recklessly caused Mr. Feighan severe emotional distress.

**ARGUMENT**

**I.    COUNT ONE: MR. FEIGHAN'S DCHRA DISCRIMINATION CLAIM[2]**

Count One seeks to hold Daversa liable for the hostile work environment that its Managing Partner, Bruce Brown, subjected Mr. Feighan because of sexual orientation.  As noted below, whether Mr. Brown created a hostile work environment for Mr. Feighan on the basis of sexual orientation is *not* an issue before the jury, as that fact is not in dispute.  The sole issue for the jury to decide on Count One is whether Daversa, as Mr. Brown's employer, should be held liable for *that* hostile work environment – the one Mr. Brown indisputably created for Mr. Feighan.

        **A.    Mr. Brown's Creation Of A Hostile Work Environment
             For Mr. Feighan Is Not A Subject Of Dispute At Trial**

            **1.    Daversa should not be permitted to proffer
                  evidence at trial disputing or challenging
                  the existence of a hostile work environment**

On summary judgment, Daversa did not challenge the fact that Mr. Brown's conduct towards Mr. Feighan constituted a "hostile work environment" based on sexual orientation.  *See* Defendant's Memorandum in Support of Motion for Summary Judgment ("Summary Judgment Memorandum"), ECF No. 36-1 (nowhere challenging the existence of a hostile work environment based on sexual orientation or seeking summary judgment on this issue); Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Summary Judgment Reply"), ECF No. 44 (nowhere challenging the existence of a hostile work environment based on sexual orientation, or questioning Mr. Feighan's summary judgment

---

[2] On June 5, 2023, Mr. Feighan filed a Pretrial Motion for Judgment as a Matter of Law on Liability on Count One of the Amended Complaint that requests the Court to enter a liability judgment on Count One in his favor and against Daversa.  In the event the Court grants that motion, it need not address the following Section I in this brief.

opposition stating Daversa was not challenging or moving for summary judgment on this fact); *see also* 2023 U.S. Dist. LEXIS 55380 at *41 (the Court noting Daversa was "not contesting that plaintiff suffered from a hostile work environment during his employment") and *id.* at *59 ("In the context of plaintiff's DCHRA claim, defendant does not contest that Brown created a hostile work environment . . . that targeted plaintiff because of his sexual orientation.").

Since Daversa elected not to challenge the fact that Mr. Brown subjected Mr. Feighan to a "hostile work environment" (as defined under law) on the basis of sexual orientation during the time of Mr. Feighan's employment with Daversa, Daversa has waived the right to contest this fact at trial. *See Interstate Fire & Cas. Co. v. Wash. Hosp. Ctr. Corp.*, 917 F. Supp. 2d 87, 92 (D.D.C. 2013) ("Since [the defendant] failed to raise this argument in its Answer to the Complaint or during summary judgment briefing, the Court may treat the argument as waived.") (citing *Noble Energy, Inc. v. Salazar*, 691 F. Supp. 2d 14, 23 n. 6 (D.D.C. 2010) (citing *Grenier v. Cyanamid Plastics, Incl*, 70 F.3d 667, 678 (1st Cir. 1995) (argument not raised by party in summary judgment motion is waived) and *Head Start Family Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11*, 46 F.3d 629, 635 (7th Cir. 1995) (argument not raised in summary judgment motion is waived)).

Accordingly, the Court is asked to enter an order that:

(1)    prohibits Daversa from proffering evidence at trial that seeks to dispute or challenge the fact that Mr. Brown subjected Mr. Feighan to a "hostile work environment" based on sexual orientation – that is, an order that precludes Daversa from disputing or challenging at trial that Mr. Feighan was subjected to "discriminatory intimidation, ridicule, and insult" by Mr. Brown that was "sufficiently severe or pervasive to alter the conditions of [his] employment and

create[d] an abusive working environment.'" *Squires v. Gallaudet Univ.*, 2021 U.S. Dist. LEXIS 183824 at *15-16 (D.D.C. 2021) (elements of a hostile work environment); and

(2)    states that the Court, after the jury is empaneled, will instruct the jury to treat as an established fact that Mr. Brown subjected Mr. Feighan to a hostile work environment based on sexual orientation; more specifically, instruct the jury that Mr. Brown subjected Mr. Feighan to discriminatory intimidation, ridicule, and insult on the basis of sexual orientation that was severe and/or pervasive, altered the conditions of Mr. Feighan's employment, and created an abusive working environment for Mr. Feighan.

This is consistent with why a jury is being empaneled on Count One: *not* to decide whether Mr. Brown subjected Mr. Feighan to a hostile work environment based on sexual orientation; but only to decide if Daversa should be held liable for that hostile work environment.

### 2.    How Mr. Feighan came to be supervised by Mr. Brown is irrelevant to this case

In ¶ 18 of its Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("Statement of Material Facts"), Daversa asserted:

> Plaintiff initially was assigned to work with and be supervised by [Daversa] employee Reece Breault.  Because Plaintiff had friction with Mr. Breault, he was reassigned to work directly for Brown.

ECF No. 36-2 at 5.

Both purported facts (that Mr. Feighan had been supervised by Reece Breault before being supervised by Mr. Brown, and Mr. Feighan had "friction" with Mr. Breault) have no relevance to any of the claims or defenses being decided by the jury, including Count One (and Daversa's defense to Count One).   Fed. R. Evid. 401 (evidence "of no consequence in determining the action" is irrelevant and should be excluded).   Because who supervised Mr. Feighan before Mr. Brown, and whether Mr. Feighan got along or not with earlier supervisors, is

of no relevance or consequence to this action, the Court is asked to include in an order that Daversa is precluded from proffering such evidence at trial.

### 3.      How Daversa handled the COVID pandemic is irrelevant to this case

In ¶ 20 of its Statement of Material Facts, Daversa asserted:

On or about March 10, 2020, in response to the COVID-19 pandemic, all of [Daversa]'s employees were encouraged to work remotely, and all offices effectively were closed. The offices remained closed until June 2021, when they implemented a slow, non-mandatory return to the office.

ECF No. 36-2 at 5.

Similarly, in ¶ 21 of its Statement of Material Facts, Daversa asserted:

Plaintiff worked remotely while in London, England, where his boyfriend lived, for part of the time during the COVID-19 pandemic.

*Id.*

How Daversa responded to the pandemic, where Mr. Feighan was located during the pandemic, and with whom he may have been living with during the pandemic, have no relevance or bearing on any claim or defense to be decided by the jury, including Count One (and Daversa's defense to Count One).  Fed. R. Evid. 401.  The Court is therefore asked to include in an order that Daversa is precluded from proffering such evidence at trial or to ask witnesses questions (including from Mr. Feighan) that are designed to elicit such evidence.

### 4.      How Mr. Brown treated employees other than Mr. Feighan is irrelevant to Count One and this case

In ¶ 39 of its Statement of Material Facts, Daversa asserted:

On one or more occasions, Plaintiff told each of his D.C. office co-workers Paige Kuderka, Kandace Elam, Ava Talbott, Ryan Garikes, Dylan Wadsworth and Reece Breault that he was working long hours, was assigned to a lot of projects and/or that Brown would sometimes contact him at night or during weekends. With the exception of Ms. Kuderka, who held the position of Director at that time,

none of those persons was a manager of RSG. Each of those persons knew Brown
to be a demanding boss and had similar experiences with him. When they worked
with Brown, he contacted them in the evenings and on the weekends as well.

ECF No. 36-2 at 15.

The ostensible purpose of proffering such purported facts at trial would be to convince
the jury that Mr. Brown's treatment of Mr. Feighan was no different than the manner in which
Mr. Brown treated Mr. Feighan's peers.  But Daversa already acknowledges (and cannot contest)
Mr. Brown treated Mr. Feighan differently from his peers (subjected him to severe and/or
pervasive harassment) and on the basis of a protective characteristic (sexual orientation).  Again,
Mr. Brown's creation of a hostile work environment for Mr. Feighan based on sexual orientation
has been conceded and is not before the jury for resolution – only whether Daversa is liable for
that hostile work environment.  Because the testimony above would seek to establish the
opposite of what Daversa has acknowledged to be the case (and has waived a right to contest),
the Court is asked to include in an order that Daversa is prohibited from proffering evidence at
trial that is designed to compare how Mr. Brown treated Mr. Feighan with how Mr. Brown
treated other Daversa employees, including any effort to show that Mr. Brown treated Mr.
Feighan no differently from other employees (which is indisputably not the case).

> **5.    What employees thought of Mr. Brown, or
> what their experiences were in working
> with him, are irrelevant to Count One
> and this case**

In interrogatory answers, Daversa identified eight female Daversa employees who claim
to have knowledge of how wonderful a person Mr. Brown is and what a pleasure it was to work
with him.  Exhibit 1 hereto (Daversa identifying Christen Morelli who claims to have "known
Bruce Brown throughout her employment at [Daversa], interacted with him occasionally, and
observed him to be professional and supportive of other employees [and] never observed Mr.

Brown engaged in any inappropriate conduct") (Julie Wrapp who claims she "knows Bruce Brown and has interacted with him occasionally [and] never observed Mr. Brown engage in any inappropriate conduct") (Geri Allyn who claims "she worked directly with and supported Mr. Brown for several years [and] viewed Mr. Brown as a mentor, and he taught her a great deal about the business [and her] working relationship with Mr. Brown always was positive") (Nicolette Hartman who claims "[s]he knew Bruce Brown well and has socialized with him at work functions [and] has never observed him engage in any inappropriate behavior") (Daversa further identifying Lindsay Angelillo, Wendy Colvano, Katie Fisher, and Samantha Pernice who claim to have had similar work experiences with Mr. Brown).

Such testimony should be excluded at trial. It is irrelevant to Count One (and this case) what employees having no connection to this case thought of Mr. Brown or what their work experiences were with him. What matters at trial is how Mr. Brown treated the plaintiff, Mr. Feighan – and on that, it is undisputed Mr. Brown subjected Mr. Feighan to a hostile work environment based on sexual orientation (a fact not contested by Daversa). How Mr. Brown supposedly interacted with and treated employees other than Mr. Feighan – especially female employees, as Daversa seems focused on – is simply not relevant to a jury's resolution of Count One (whether Daversa should be held liable for Mr. Brown's harassment of Mr. Feighan), or any of the other Counts. Such evidence is also an attempt to proffer impermissible character evidence, i.e., that Mr. Brown is supposedly a great guy to all other people, so he could not have possibly acted the way he is accused of behaving with Mr. Feighan. Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or character trait.").

In addition, how Mr. Brown supposedly got along with other Daversa employees, including female employees, is irrelevant to Daversa's *Faragher/Ellerth* defense, which is only concerned with whether "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and whether "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  2023 U.S. Dist. LEXIS at *48.  Daversa self-servingly proffering the testimony of its own employees on what a swell guy Mr. Brown supposedly is does not assist Daversa one iota in meeting its *Faragher/Ellerth* burdens.

Also, such testimony by Daversa employees would confuse or mislead the jury into believing (wrongly) that Mr. Brown's treatment of employees other than Mr. Feighan is somehow material to the case, or to Daversa's *Faragher/Ellerth* defense, when they are not. Fed. R. Evid. 403 (evidence can be excluded if it would confuse or mislead the jury).  For the reasons stated, the Court is asked to include in an order that Daversa is precluded from proffering evidence or testimony at trial on the matter of how Mr. Brown treated employees other than Mr. Feighan and/or what the experiences were of employees other than Mr. Feighan in working with Mr. Brown.

      **6.**      **Mr. Feighan's private texts with his romantic partner concerning private matters between them, and texts where Mr. Feighan references his private sex life, are irrelevant to Count One and this case**

In discovery, private texts between Mr. Feighan and his then romantic partner, Bart Panarese, were produced.  Exhibits 2 and 3.  The texts were exchanged during and after Mr. Feighan's employment with Daversa.  As the Court can see, the texts contain purely private communications between Mr. Feighan and Mr. Panarese about personal matters between them,

such as their relationship, their love for each other, getting married, traveling together, going on vacations, getting tattoos, sexual topics, their respective parents, and other privately discussed matters typical of romantic couples.  Such private communications have no relevance to any of the Counts being decided by the jury, including Count One, where, again, the sole issue before the jury is whether Daversa should be held liable for Mr. Brown's harassment of Mr. Feighan. These communications similarly have no relevance to either element of a *Faragher/Ellerth* defense.

 Moreover, whatever minimal relevance such private communications on such private matters may have to Count One (and there is none) is substantially outweighed by the danger of unfair prejudice to Mr. Feighan (i.e., the jury deciding Count One, or the merits of Daversa's *Faragher/Ellerth* defense, based on irrelevant considerations of Mr. Feighan's personal lifestyle outside his employment with Daversa).  In similar fashion, some private texts were produced where Mr. Feighan made passing reference to his sex life.  *See, e.g.,* Exhibit 4.  These, too, have no relevance to any Count or defense in the case (including Count One), and, if proffered, would seek only to embarrass Mr. Feighan before the jury.

Accordingly, the Court is asked to include in an order that Daversa is prohibited from proffering the private texts in Exhibits 2-4 as evidence at trial, as well as any other evidence or testimony that is designed to elicit the details of Mr. Feighan's then romantic and private relationship with Mr. Panarese (or any other romantic partners), or instances where Mr. Feighan made passing reference to having sexual relations with others.

**7.    Whether or not Mr. Feighan smoked marijuana, or
used drugs with co-workers during his employment
with Daversa, is irrelevant to Count One and this case**

During Mr. Feighan's deposition, and in some texts he had with others, the subject of

whether he smoked marijuana, or participated in drug taking with co-workers during the time of

his employment with Daversa, were raised.  Similar to Mr. Feighan's private romantic and sex

life, whether he did or did not participate with others in using drugs has no relevance or

probative value to any Count before the jury – not to Count One (whether Daversa should be

held liable for Mr. Brown's harassment of Mr. Feighan based on sexual orientation and

Daversa's related *Faragher/Ellerth* defense); not to Counts Five and Six (whether Daversa

should be held liable for negligently retaining Mr. Brown); not to Count Seven (whether Daversa

owes unpaid wages/bonuses to Mr. Feighan under the DCWPCL); and not to Count Eight

(whether Daversa should be held liable for Mr. Brown's intentional infliction of emotional

distress upon Mr. Feighan).

Whether Mr. Feighan did or did not smoke marijuana, or used drugs with others, are of

no consequence to the Counts the jury will be deciding, and any possible marginal relevance

there may be is substantially outweighed by the danger of unfair prejudice and embarrassment to

Mr. Feighan, and misleading the jury into believing that drug use has some relevance to the

jury's task, when it has none.  The Court is therefore asked to include in an order that Daversa is

prohibited from proffering evidence at trial on the subject of whether Mr. Feighan did or did not

smoke marijuana or use other drugs with others (including co-workers) at any time (including the

time of his employment with Daversa).

**B.      On The Question Of Whether Mr. Feighan
Suffered A "Tangible Employment Action"**

As the Court noted, "[i]n *Faragher* and *Ellerth*, the Supreme Court articulated two
categories of harassment claims for which employers may be held liable: (1) harassment that
culminates in a tangible employment action, for which employers are strictly liable, and (2)
harassment that takes place in the absence of a tangible employment action, to which employers
may assert an affirmative defense."  2023 U.S. Dist. LEXIS 55380 at *42.[3]  "If a plaintiff can
satisfy the first requirement, the employer is strictly liable, but if he cannot, the employer may
assert the *Faragher-Ellerth* affirmative defense, which, if proven true, absolves the employer of
vicarious liability for the hostile work environment suffered by an employee due to the conduct
of a supervisor."  *Id.* at *42-43.

As the Court further noted, a "tangible employment action [ ] has two components.  First,
plaintiff must show he suffered significant change in employment status, such as hiring, firing,
failing to promote, reassignment with significantly different responsibilities, or a decision
causing a significant change in benefits.  Second, plaintiff must establish[] the requisite link
between a supervisor's injurious conduct in the workplace and the employing enterprise; it must

---

[3] Notably, the Faragher-Ellerth defense is not automatically applicable to DC Human Rights Act
claims as the Court noted in its Summary Judgment Opinion at 27, FN 9:

> When interpreting the DCHRA, the D.C. Court of Appeals has held that cases
> construing Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, are
> persuasive, though not always dispositive. *Rose*, 285 A.3d at 192; *see also Jones
> v. D.C. Dep't of Corr.,* 429 F.3d 276, 278-79, 368 U.S. App. D.C. 279 (D.C. Cir.
> 2005) (analyzing DCHRA and Title VII claims using the same standards).  The
> *Faragher-Ellerth* framework has been applied to DCHRA hostile work
> environment claims in other decisions reached in this Court but no binding
> precedent so requires (citing DDC cases).  Here, *Faragher-Ellerth* is assumed to
> be an available affirmative defense to a DCHRA hostile work environment claim.

be an action *done by the supervisor* whose conduct has generated the employee's claim." *Id.* at *43-44 (citations and quotation marks omitted) (emphasis in original).

On summary judgment, Mr. Feighan contended that Daversa is strictly liable for Mr. Brown's harassment of him because he suffered two tangible employment actions: denial of bonuses and constructive discharge. The Court held both forms of "tangible employment actions" can be submitted to the jury. *Id.* at 44-48.

> **1. Daversa should not be permitted to proffer evidence disputing or challenging the fact that Mr. Feighan did the work that resulted in the closing of nine executive placements that form the basis of his bonus claim**

On the first tangible employment action (bonuses), Mr. Feighan established that he searched for, won, and closed nine executive placements for Daversa that form the basis of his claim for unpaid bonuses. Plaintiff's Response to Defendant's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, ECF No. 39-1 at 14-15 (¶ 17) (listing executive placements Alation, Big Health, BirdEye, Constellation, PeerNova, Redmarlin (two), Testim, and Zycada); *see also* 2023 U.S. Dist. LEXIS 55380 at *54 (the Court noting "plaintiff has demonstrated he completed those executive placements").

In its summary judgment filings, Daversa admitted Mr. Feighan did the work that brought about and closed these placements. In ¶¶ 25-26 of its Statement of Material Facts, Daversa listed Mr. Feighan's descriptions of the work he did to win and close seven of the executive placements as undisputed facts. ECF 36-2 at 7-8 (citing Mr. Feighan's Interrogatory answers as support). In ¶¶ 22-24 of its Statement of Material Facts, Daversa confirmed the work Mr. Feighan performed on Daversa's behalf including "[h]andling all aspects of searches independently with little or no supervision . . . [Mr. Feighan] performed all of these tasks and ran

14

entire searches by himself several times." *Id.* at 6-7. In ¶ 29 of its Statement of Material Facts, Daversa referred to Mr. Feighan's descriptions of the work he did to win and close the executive placements as "facts." *Id.* at 9; *see also* Daversa's Summary Judgment Memorandum, ECF No. 36-1 at 55-56 (acknowledging Mr. Feighan did the work to close the executive placements); 2023 U.S. Dist. LEXIS 55380 at *4-5 (the Court acknowledging the parties' evident agreement that Mr. Feighan performed the work that closed the nine executive placements).

Accordingly, the Court is asked include in an order that:

(1)    Daversa is prohibited from proffering evidence at trial that seeks to challenge or dispute the fact that it was Mr. Feighan's work that closed the nine executive placements above (Alation, Big Health, BirdEye, Constellation, PeerNova, Redmarlin (two), Testim, and Zycada); and

(2)    states that the Court, after the jury is empaneled, will instruct the jury to treat as an established fact that Mr. Feighan searched for, won, and closed nine executive placements for Daversa, specifically, Alation, Big Health, BirdEye, Constellation, PeerNova, Redmarlin (two), Testim, and Zycada).[4]

> **2.    Daversa should not be permitted to proffer evidence disputing or challenging the fact that Mr. Brown's harassment of Mr. Feighan resulted in Mr. Feighan's constructive discharge**

In its Summary Judgment Memorandum, Daversa did not challenge or dispute the fact that the abusive work environment to which Ms. Brown subjected Mr. Feighan based on sexual

---

[4] Daversa's *only* contention regarding the executive placements is that Mr. Feighan must have "sourced" the placements in order to be eligible for a bonus. *See* ECF No. 36-1 at 40-42 and 36-2 at 9-10 (¶¶ 29-30, 32); 2023 U.S. Dist. LEXIS 55380 at *22-23 & *52-53 (the Court noting Daversa's "sourcing" contention). While Mr. Feighan does not agree with the contention and will dispute it, he does not object to Daversa proffering evidence at trial in ostensible support of its "sourcing" contention.

orientation resulted in Mr. Feighan's constructive discharge from Daversa. *See* ECF No. 36-1 (nowhere challenging the fact of a constructive discharge or seeking summary judgment on the issue). That is, Daversa did not challenge or dispute that "the abusive working environment [to which Mr. Feighan was subjected] became so intolerable that [his] resignation qualified as a fitting response." *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004)).

Daversa's sole contention in its Summary Judgment Memorandum was Mr. Feighan's pleading did not provide notice of a constructive discharge. ECF No. 36-1 at 19. Mr. Feighan rebutted the contention in his summary judgment opposition by citing decisions of this Court and the D.C. Circuit that make clear the magic words "constructive discharge" do not need to appear in the pleading, the facts in support of a constructive discharge were pled upon the plain face of the pleading, and by citing more decisions of this Court and the D.C. Circuit observing that if a defendant felt it necessary to raise and address in some manner the subject of constructive discharge in its opening summary judgment brief (which Daversa did, *see* ECF No. 36-1 at 19), that is a confirming indicator the defendant received notice of the constructive discharge and cannot legitimately contend otherwise. ECF No. 39 at 21. In its Summary Judgment Reply, Daversa did not address or challenge these contentions by Mr. Feighan or the caselaw he cited. ECF No. 44 at 12 (Daversa simply regurgitated its claim of not receiving notice of the constructive discharge).

In its Memorandum Opinion, the Court did not expressly address Daversa's no-notice contention, but by disregarding it and discussing the facts of Mr. Feighan's resignation from Daversa, 2023 U.S. Dist. LEXIS at *26-29, and the legal role constructive discharge may potentially play in the case, *id.* at *45-47, it is submitted the Court, at a minimum, implicitly

16

rejected Daversa's contention. Further evidence of such a disposition is the fact that in its summary judgment reply brief, Daversa asked the Court not to address constructive discharge, ECF No. 44 at 12, which the Court ignored by addressing constructive discharge in its decision. *Id.* at *26-29, 45-47.[5]

Accordingly, because Daversa did not challenge or dispute (or failed to timely do so) the fact of Mr. Feighan's constructive discharge, Daversa has waived the right to contest this fact at trial. *See* Section A(1) *supra*. The Court is therefore asked to enter an order that:

(1)     prohibits Daversa from proffering evidence at trial that seeks to dispute or challenge the fact that the abusive work environment to which Ms. Brown subjected Mr. Feighan resulted in Mr. Feighan's constructive discharge from Daversa; that is, an order that prohibits Daversa from disputing or challenging that the abusive working environment to which Mr. Feighan was subjected became so intolerable that Mr. Feighan's resignation qualified as a fitting response; and

(2)     states that the Court, after the jury is empaneled, will instruct the jury to treat as an established fact that the abusive working environment to which Mr. Feighan was subjected resulted in his constructive discharge from Daversa.[6]

---

[5] Daversa belatedly attempted to question the fact of Mr. Feighan's constructive discharge *for the first time* in its summary judgment *reply* brief, ECF No. 44 at 14-17, but the Court (rightfully it is submitted) ignored this in its discussion of constructive discharge in its decision, because "the Court does not consider arguments raised for the first time in reply." *Louise Trauma Ctr. LLC v. United States Dep't of Homeland Sec.*, 2023 U.S. Dist. LEXIS 85566 at *9 n. 4 (D.D.C. 2023) (citing *Lu v. Lezell*, 45 F. Supp. 3d 86, 91 (D.D.C. 2014)).

[6] Daversa's sole, non-waived contention is that Mr. Brown's bonus denials – which Mr. Feighan contends precipitated his constructive discharge – did not constitute an "official act" on behalf of Daversa. ECF No. 36-1 at 19-20; ECF No. 40 at 13-14. Again, while Mr. Feighan does not agree with this contention and will dispute it, he does not object to Daversa proffering evidence at trial in ostensible support of its no "official act" contention, since the question of whether Mr. Brown's bonus denials constituted "official acts" of Daversa will be before the jury.

**3.    Daversa should not be permitted to proffer evidence at trial on whether other irrelevant changes occurred to Mr. Feighan's employment**

On page 18 of its opening summary judgment brief, Daversa asserted:

> . . . Plaintiff did not suffer any "significant change in employment status." [Daversa] did not discharge Plaintiff, deny him a promotion, reassign or transfer him or take any other similar action at any time during his employment, and the Complaint does not allege any such action. [Daversa] also did not reduce his salary. To the contrary, [Daversa] gave him a raise in salary at the beginning of 2020, after six months of employment.

ECF No. 36-1 at 18 (citation omitted).

The purported facts – Daversa did not fire Mr. Feighan, deny him a promotion, reassign or transfer him, reduce his salary, and gave him a salary increase – are irrelevant to the case. The only two relevant "tangible employment actions" for the jury to decide are, as discussed above: (1) whether Mr. Feighan (as Daversa contends) needed to "source" the executive placements he worked on and closed to qualify for the bonuses he did not receive and was denied the bonuses on that basis, and (2) whether Mr. Feighan's constructive discharge was precipitated by the "official act" of Mr. Brown not awarding him the bonuses that Mr. Brown promised to pay him for closing the placements.

*These* are the only two relevant "tangible employment action" issues the jury will need to focus on and decide at trial (as the Court pointed out in its Memorandum Opinion, *see* 2023 U.S. Dist. LEXIS 55380 at *43-48), *not* whether Daversa fired Mr. Feighan, or denied him a promotion, or reassigned or transferred him, or increased his salary – personnel actions having no relevance to the case. Daversa acknowledged the irrelevancy of these employment actions in its Summary Judgment Memorandum (quoted above) by pointing out that none of them ever occurred and Mr. Feighan never alleged or pled that they did occur (". . . and the Complaint does not allege any such action" occurred). Daversa also acknowledged in its Summary Judgment

18

Reply that the only two "tangible employment actions" relevant to Count One are the denied bonuses and the constructive discharge.  ECF No. 41 at 8.  Further, allowing Daversa to put on evidence of irrelevant employment actions that never occurred will only confuse and mislead the jury into thinking such actions (or non-actions) are somehow relevant to the "tangible employment action" issues that need resolution, when they are not.  Fed. R. Evid. 403.

Accordingly, the Court is asked to include in an order that Daversa is not permitted to proffer evidence at trial on whether it fired Mr. Feighan, denied him a promotion, reassigned or transferred him, or reduced or raised his salary, or failed to take other adverse actions that have no relevance to this case.

    **C.**    **The Two Elements of Daversa's *Faragher/Ellerth* Defense[7]**

As the Court noted, the *Faragher/Ellerth* "defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by [Daversa] or to avoid harm otherwise." 2023 U.S. Dist. LEXIS at *48.

        **1.**    **On the first element of *Faragher/Ellerth*,
general self-serving testimony by Daversa
managers on the company's "professional
environment" and  "workplace culture"
and the CEO's "commitment to diversity"
are irrelevant to a *Faragher/Ellerth* defense**

"For the first element, defendant must show that it took reasonable care to prevent *and* correct harassment."  *Id.* at *48-49 (quoting *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d

---

[7] It needs stressing that a *Faragher/Ellerth* defense only comes into play ***if*** the jury finds that Mr. Feighan did not suffer either of the "tangible employment actions" at issue in the case.  If the jury finds Mr. Feighan suffered one or both of the "tangible employment actions," the *Faragher/Ellerth* defense is inapplicable, and Daversa must held strictly liable for Mr. Brown's hostile work environment as a matter of law.

1305, 1314 (11th Cir. 2001)) (emphasis in original).  "As to preventing harassment [the first part of this element], the employer must show that its sexual harassment policy was effectively published, that [the policy] contained reasonable complaint procedures, and that [the policy] contained no other fatal defect."  *Id.* at *49 (quoting *Frederick*, 246 F.3d at 1314).  "As to correcting harassment [the second part of this element], defendant must demonstrate that [it] acted reasonably promptly on [plaintiff's] complaint when it was given proper notice of [his] allegations as required under its complaint procedures."  *Id.*

After setting forth these legal standards, the Court applied them to the evidence at hand and concluded "a reasonable jury could find that [Daversa] failed to take reasonable care to both prevent and correct harassment."  *Id.* at *49.  The Court examined Daversa's procedure for reporting harassment in the workplace and concluded it "suffered from a fatal defect."  *Id.* at *49-50 (noting "the policy was impractical in situations when the harassing supervisor was Brown or the CEO, given their prominence within [Daversa]'s management hierarchy and their close personal friendship.").  After examining the evidence further, the Court concluded that "genuine issues of material fact have been presented on the issue of whether [Daversa] took sufficient steps to correct harassing behavior."  *Id.* at *50-51 (noting that after a Daversa employee, Casey Marx, brought Mr. Brown's inappropriate conduct towards Mr. Feighan to the attention of management, including the CEO (Mr. Daversa), management undertook no action to investigate and correct the misconduct even after Mr. Brown admitted to it).  The Court concluded: "A reasonable jury could thus find that [Daversa] lacked the requisite policies to investigate allegations of sexual assault and correct such inappropriate conduct given that [Daversa] was told that Brown was engaging in inappropriate conduct and took no steps to investigate those allegations beyond alerting Brown to Marx's email.  *Id.* at *51.

Omitted from the Court's *Faragher/Ellerth* analysis was any consideration given to such general, amorphous matters like whether Daversa had in place a "professional environment," or whether Daversa's "workplace culture" was conducive (or not) to the creation of hostile work environments, or whether Daversa's CEO, Mr. Daversa, was personally committed (or not) to the goal of a discrimination-free work environment.  Such general, non-specific matters are irrelevant to proving either element of a *Faragher/Ellerth* defense, which is focused entirely upon the specific hostile work environment at issue in the case.  *See Payne v. Great Plains Coca-Cola Bottling Co.*, 348 F. Supp. 3d 1194, 1202 n. 6 (N.D. Okla. 2018) ("The *Faragher-Ellerth* defense, like Title VII law generally, focuses on defendant's response to the alleged harassment *at issue* [in the case]") (emphasis in original); *Macias v. Southwest Cheese Co., LLC*, 181 F. Supp. 3d 883, 895 n. 4 (D. N.M. 2006) ("[T]he *Faragher/Ellerth* defense, like Title VII law generally, focuses on Defendant's response or lack of response to *the course of harassment at issue* [in the case]") (emphasis added); *Williams v. Austal*, U.S.A., L.L.C., 2014 U.S. Dist. LEXIS 122942 at *23 (D. Ala. 2014) ("[Defendant] submitted evidence (some of which appears irrelevant) that it characterizes as examples of 'responses' taken, *in general*, to racial/harassment incidents during its history.") (emphasis added); *Conner v. Wal-Mart Stores*, 2006 U.S. Dist. LEXIS 115315 at *49 (E.D. Tex. 2006) ("An employer that takes effective measures to prevent and terminate the sexual harassment *at issue* [in the case] has satisfied the first prong of the *Ellerth/Faragher* affirmative defense.") (emphasis added).

As summarized by one court:

> The *Faragher/Ellerth* standard requires an examination of the conduct *at issue in a specific case* . . . [T]he question the court must answer under the *Faragher/Ellerth* affirmative defense is not whether [the employer]'s past efforts to prevent and correct any sexually harassing behavior were effective, but rather, *whether [the employer]'s effort in this <u>particular instance</u> involving [the plaintiff] was ineffective to remedy the harassment*.  Therefore, past investigations

involving individuals *not connected with this lawsuit* are irrelevant . . . [and] any [such] evidence uncovered would provide no probative value . . .

*Alford v. Aaron Rents, Inc*., 2010 U.S. Dist. LEXIS 67790 at *76-77 (S.D. Ill. 2010) (underline in original; italics added).

And yet, this is the kind of general, non-specific evidence, irrelevant to an employer's *Faragher/Ellerth* defense, Daversa is evidently planning to present at trial.  As shown in its answers to interrogatories, to establish its *Faragher/Ellerth* defense at trial, Daversa evidently plans to call a parade of female Partners, all of whom answerable to Mr. Daversa, to testify about "[Daversa]'s professional, collegial, and supportive workplace culture . . . the commitment of the company and Paul Daversa to diversity and inclusion, and to prevent discrimination and harassment in [Daversa]'s workplace, including on the basis of its employees' gender and sexual orientation . . . [how they] reject any notion that [Daversa] is a 'boys club' or a heterosexual male-dominated company . . . [how they have] personally interacted with Mr. Daversa, who has supported [them] throughout [their] career at [Daversa], and [how they have] observed Mr. Daversa with employees in a way that is professional and respectful at all times."  Exhibit 1 (Daversa identifying Christen Morelli, a Partner, who claims to have "personal knowledge" of the matters above, after which Daversa identifies seven more female Partners claiming to have the identical or virtually similar "personal knowledge").

In line with the cases above, and with the Court's analysis of *Faragher/Ellerth*, *see* 2023 U.S. Dist. LEXIS 55380 at *48-52, such evidence should be excluded as having no probative value to Daversa's *Faragher/Ellerth* defense, and if allowed, would result in confusing the jury on what the true *Faragher/Ellerth* issues are for it to decide.  The *Faragher/Ellerth* issue before the jury is *not* whether Daversa is a "professional, collegial [or] supportive workplace culture," or how Mr. Daversa treats people not connected to this lawsuit, or what his level of commitment

is (or is not) to providing a discrimination-free work environment. Such factors hold no weight under *Faragher/Ellerth*. Rather, the *Faragher/Ellerth* issues before the jury are confined to this *specific case* – that is, to the hostile work environment at hand *in this case* (that Mr. Brown created for Mr. Feighan on the basis of sexual orientation) and whether Daversa's efforts *in this case* were effective or not in correcting or remedying Mr. Brown's harassment of Mr. Feighan. Purported evidence outside these bounds is irrelevant.[8]

Accordingly, the Court is asked to include in an order that Daversa is not permitted to proffer evidence at trial of its so-called "professional environment," or "workplace culture," or Mr. Daversa's ostensible commitment to a discrimination-free work environment, or how well Mr. Daversa supposedly treated or got along with others at Daversa, or any other such matters having no relevance to a *Faragher/Ellerth* defense.

> **2.    On the first element of *Faragher/Ellerth*, the issue
> before the jury is whether Daversa properly trained
> *the harasser* in this case – Mr. Brown – to refrain from
> sexual harassment, *not* whether Daversa succeeded
> in properly training other Partners not connected
> to this lawsuit to refrain from sexual harassment**

In his summary judgment opposition, Mr. Feighan proffered evidence showing that during his twenty-plus month tenure at Daversa, Mr. Brown attended only one one-hour sexual harassment training given by Daversa, at which Mr. Brown left early, found to be a joke, and, afterwards, continued unabated with his harassment of Mr. Feighan. ECF No. 39-1 at 7-10 (¶¶ 9-11); *see also* 2023 U.S. Dist. LEXIS 55380 at *17-18 & *50 n. 13 (where the Court took note of these facts).

---

[8] The irrelevancy of such evidence to a *Faragher/Ellerth* defense explains why Daversa proffered none of the "professional environment" and "workplace culture" evidence contained in its interrogatory answer in support of its Motion for Summary Judgment. *See* ECF No. 36-1, 36-2, 44, and 44-1 (Daversa's summary judgment submissions).

In response, it appears Daversa's strategy at trial will be to distract attention away from the dearth of sexual harassment training it gave Mr. Brown, and how unsuccessful the one training it gave him was in stopping his harassment of Mr. Feighan, by putting on a parade of Partners *other than Mr. Brown* to testify on how *they* supposedly were trained by Daversa on sexual harassment and discrimination in the workplace. Exhibit 1 (Daversa identifying the same eight female Partners all of whom evidently are prepared to testify how *they* have "taken training on [Daversa]'s policies and procedures regarding discrimination and harassment").

Again, this kind of parade testimony by employees of Daversa having no connection to this lawsuit should be denied, and for much of the same reasons stated in the immediately prior section of this brief. How *other* Partners (Partners who are not Mr. Brown and have no relevance or connection to this case) were trained to avoid sexually harassing *their* subordinates is not probative of the *Faragher/Ellerth* question before the jury: namely, whether Daversa *in this specific case* effectively trained *the harasser* – Mr. Brown – to refrain from sexually harassing *his* subordinates, including Mr. Feighan. How Daversa trained other Partners is not relevant to *that* question, the one to be resolved by the jury. And allowing such evidence on how other Partners were trained will only confuse and mislead the jury into deliberating on a question this is not before it at trial.

Consistent with the above, the Court identified in its Memorandum Opinion the precise issue for the jury to decide: whether Daversa had properly trained *Mr. Brown* – the harassing Partner in this case – on matters of sexual harassment:

> [W]hile the sexual harassment training undoubtedly took place in 2019, a reasonable factfinder could determine that the training was not a serious or effective one because *Brown* admitted that the training was the first such training he had seen in his twenty-year tenure at the company, the session was merely an hour long, and *Brown* not only left the training early but also joked about the

> training afterwards, with no apparent management correction or critique of that conduct as irresponsible or otherwise unacceptable.

2023 U.S. Dist. LEXIS 55380 at *50 n. 13 (emphasis added); *see also id.* at *17-18 (where the Court, in its Factual Background, focused on Daversa's sexual harassment training in the context of how that training affected *Mr. Brown*, i.e., whether he attended the training, how many such trainings he attended in the past, how long he stayed at this particular training session, what he said he took away from the training, and what effect, if any, did the training he receive have on stopping his harassment of Mr. Feighan).

In its Memorandum Opinion, the Court (correctly) focused the training issue where it should be (on the harasser, Mr. Brown) and identified the genuine issue for the jury to decide – whether Daversa took reasonable steps to train *Mr. Brown* on matters of sexual harassment (not what steps Daversa took or did not take to train Partners other than Mr. Brown). This approach is consistent with caselaw. *See Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 164 (5th Cir. 2007) (focusing *Faragher/Ellerth* inquiry on whether the alleged harasser had "received the requisite training and copies of the [employer]'s sexual-harassment policy statements"); *Hernandez Payero v. Pereira*, 493 F. Supp. 2d 215, 238 (D. P.R. 2006) (focusing *Faragher/Ellerth* inquiry on the fact that the alleged harasser had "never received any formal training on sexual harassment"); *Hong v. Right Mgmt. Consultants, Inc.*, 2006 U.S. Dist. LEXIS 15252 at *38-39 (N.D. Ca. 2006) (identifying a genuine issue for the jury to decide on whether the employer's sexual harassment training of the alleged harasser was sufficient to establish a *Faragher/Ellerth* defense).

Accordingly, the Court is asked to include in an order that Daversa is prohibited from proffering evidence at trial on what efforts it made to train Partners other than Mr. Brown on matters of discrimination and sexual harassment.

>    **3.     On the second element of *Faragher/Ellerth*,**
>            **which non-management employees Mr.**
>            **Feighan did not report Mr. Brown's**
>            **harassment to is irrelevant to this case**

In ¶ 40 of its Statement of Material Facts, Daversa asserted:

> Plaintiff never informed any of Paige Kuderka, Kandace Elam, Ava Talbott, Ryan
> Garikes, Dylan Wadsworth and Reece Breault that Brown had assaulted him or
> that he engaged in any other inappropriate conduct of a sexual nature, and he did
> not tell them that Brown mistreated him in any way because of his sexual
> orientation. Therefore, Plaintiff's statements were routine workplace concerns and
> were not about workplace harassment and they did not report the matter to
> anyone.

Document 36-2 at 15 (¶ 40).

Earlier, in ¶ 39 of its Statement of Material Facts, Daversa confirmed that "[w]ith the

exception of Ms. Kuderka, who held the position of Director at that time, none of those persons

[above] was a manager of [Daversa]." *Id.* ¶ 39. This is significant because Daversa's procedure

for reporting harassment in the workplace defined a specific universe of persons to whom such

reports should be directed:

> Employees . . . who feel that they have been harassed . . . should immediately report
> such conduct to their *supervisor*, to *the CEO*, or any other *member of management*.

2023 U.S. Dist. LEXIS 55380 at \*15-16 (citing ECF. No. 39-15 at 14-16) (emphasis added).

Accordingly, because Kandace Elam, Ava Talbott, Ryan Garikes, Dylan Wadsworth and

Reece Breault were neither Mr. Feighan's supervisor, the CEO, nor members of management,

whether or not Mr. Feighan reported Mr. Brown's harassment to these non-supervisory, non-

management employees is irrelevant to Daversa's procedure for reporting harassment in the

workplace, and therefore, is irrelevant to Daversa's effort to satisfy the second element of the

*Faragher/Ellerth* defense (whether "the plaintiff employee unreasonably failed to take advantage

of any preventive or corrective opportunities provided by the employer"). Daversa conceded the

irrelevancy of whether Mr. Feighan reported Mr. Brown's harassment to those not specifically indicated in its reporting procedure on page 24 of its Summary Judgment Memorandum.  ECF No. 36-1 at 24 ("Of course, reporting [harassing] conduct to low-level employees did not satisfy [Daversa]'s policy . . .").

Moreover, allowing Daversa to proffer evidence on whether Mr. Feighan reported Mr. Brown's harassment to employees *other than* Mr. Feighan's supervisor, the CEO, and/or members of management (the persons identified in Daversa's policy) will only serve to confuse or mislead the jury into believing there is some relevance or significance to whether Mr. Feighan reported Mr. Brown's harassment to, as Daversa put it, "low-level employees" who are not identified in Daversa's policy, when there is no relevance at all.  Fed. R. Evid. 403.

Accordingly, the Court is asked to include in an order that Daversa is precluded from proffering evidence at trial on whether Mr. Feighan reported Mr. Brown's harassment to individuals other than those identified in Daversa's policy (specifically, Mr. Feighan's supervisor, the CEO, and members of management), including the non-supervisory, non-management employees identified above.

## II.    COUNT EIGHT: MR. FEIGHAN'S INTENTIONAL INFLICTION CLAIM

In Count Eight, Mr. Feighan seeks to hold Daversa liable for Mr. Brown's intentional infliction of emotional distress ("IIED").  As the Court noted, the elements of an IIED claim are: "(1) extreme and outrageous conduct on the part of the defendant, which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress."  2023 U.S. Dist. LEXIS 55380 at *57-58 (quoting *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 995 (D.C. Cir. 2014) (quoting *Futrell v. Dep't of Labor Fed. Credit Union*, 816 A.2d 793, 808 (D.C. 2003)).

**A.    Daversa Should Not Be Permitted To Proffer Evidence
At Trial Disputing Or Challenging The First Liability
Element Of An IIED Claim – That Mr. Brown's Conduct
Towards Mr. Feighan Was "Extreme Or Outrageous"**

As the Court noted, "repeated racial or sexual harassment" by the defendant satisfies the
first element of a IIED claim ("extreme and outrageous conduct").   2023 U.S. Dist. LEXIS
55380 at *59-60 (citing *Purcell v. Thomas*, 928 A.2d 699, 711 (D.C. 2007) ("Creation of a
hostile work environment by racial or sexual harassment may, upon sufficient evidence,
constitute a prima facie case of intentional infliction of emotional distress"); *see also Homan v.
Goyal*, 711 A.2d 812, 820 (D.C. 1998) ("Repeated harassment . . . may compound the
outrageousness of incidents which, taken individually, might not be sufficiently extreme to
warrant liability"); *King v. Kidd*, 640 A.2d 656, 669, 672 679 (D.C. 1993) ("[T]his court [has]
recognized that a hostile work environment produced by sexual harassment can provide a factual
basis for the kind of [IIED] tort action at issue here . . . [A] pattern of sexual harassment [is]
[]sufficient to prove extreme and outrageous conduct . . ."); *Howard Univ. v. Best*, 484 A.2d 958,
986 (D.C.1984) ("We hold that [the plaintiff] made out a prima facie case of intentional
infliction of emotional distress insofar as she demonstrated repeated 'sexual harassment' by the
man who was her supervisor.  This evidence of a pattern of harassment was sufficient for the jury
to find that [the defendant] intentionally and recklessly subjected Dr. Best to outrageous conduct
. . .").

As earlier noted, Daversa has never challenged or disputed the fact that Mr. Brown
subjected Mr. Feighan to a hostile work environment based on sexual orientation.  *See* Section
I(A) *supra*; *see also* Daversa's Summary Judgment Reply, ECF No. 44 at 32-34 (where Daversa
did not question or dispute Mr. Feighan's citation to the D.C. decisions above in his summary
judgment opposition (ECF No. 39 at 52-53) which state the existence of a hostile work

environment on the basis of a protective characteristic (an established fact in this case) satisfies the first element of an IIED claim (extreme or outrageous conduct) as a matter of law).

Because it is an established fact in this case, and one the jury should be instructed on, that Mr. Brown's conduct towards Mr. Feighan constituted a hostile work environment based on sexual orientation, and given the law that equates "hostile work environment" with "extreme or outrageous conduct," *see also* 2023 U.S. Dist. LEXIS 55380 at \*59 (the Court confirming "that creating a hostile work environment satisfies the 'extreme or outrageous' element for IIED under D.C. law"), there is no need for the parties to litigate, or for the jury to decide, the first liability element of Mr. Feighan's IIED claim at trial – as that too is an established fact.  Simply stated, an admission that Mr. Brown created a "hostile work environment" for Mr. Feighan on the basis of sexual orientation equates to an admission that Mr. Brown's conduct towards Mr. Feighan was "extreme or outrageous" for purposes of an IIED claim.

Accordingly, the Court is asked to include in an order that:

(1)    Daversa is prohibited from proffering evidence at trial that seeks to dispute or challenge the fact that Mr. Brown's conduct towards Mr. Feighan in this case was extreme and/or outrageous (the first element of Mr. Feighan's IIED claim), including evidence "that plaintiff also engaged in inappropriate banter with Brown," 2023 U.S. Dist. LEXIS 55380 at \*60 (which is irrelevant to the first element of the IIED claim given that this element has been established as a matter of law by virtue of the admitted and uncontestable fact that Mr. Brown created a hostile work environment for Mr. Feighan based on a protective characteristic (sexual orientation); and

(2)    states that the Court, after the jury is empaneled, will instruct the jury that, in deciding Mr. Feighan's IIED claim, it should treat as an established fact that Mr. Brown's conduct towards Mr. Feighan in this case was extreme and outrageous.

### B.    Daversa Has Not Contested The Remaining Liability Elements Of An IIED claim ("Intentionally Or Recklessly Caused The Plaintiff Severe Emotional Distress")

No where in its summary judgment papers – both opening and reply – did Daversa contest elements (2) and (3) of Mr. Feighan's IIED claim or move for summary judgment on these elements (that Mr. Brown intentionally or recklessly caused Mr. Feighan severe emotional distress).  *See* ECF No. 36-1 at 45-48; ECF 44 at 32-34 (nowhere addressing or contesting these elements).  Mr. Feighan pointed this out in his Summary Judgment Opposition.  ECF No. 39 at 52 n. 20 ("Daversa does not move for summary judgment on the remaining elements of a IIED claim.").  In its Summary Judgment Reply, Daversa did not challenge this or indicate Mr. Feighan was wrong.  *See* ECF No. 44 at 32-24.

Since Daversa has elected not to challenge or dispute the second and third liability elements of Mr. Feighan's IIED claim, there is no need to litigate these elements at trial.  *See* Section I(A) *supra*.  Accordingly, the Court is asked to enter an order that:

(1)    prohibits Daversa from proffering evidence at trial that seeks to dispute or challenge the second and third elements of Mr. Feighan's IIED claim; and

(2)    states that the Court, after the jury is empaneled, will instruct the jury that, in deciding Mr. Feighan's IIED claim, it should treat as established facts that Mr. Brown intentionally and/or recklessly caused Mr. Feighan severe emotional distress.[9]

---

[9] The *sole* IIED liability issue to be decided by the jury is whether Mr. Brown acted outside the scope of employment when he engaged in the conduct giving rise to the claim – and Daversa's proffers on IIED liability should be limited to that issue.

### III.   "FAILURE TO MITIGATE" ECONOMIC LOSSES IS NOT AN ISSUE IN THE CASE

Recently, the Court permitted Daversa to take discovery (including third-party discovery) of post-employment documents pertaining to Mr. Feighan that typically are relevant to a plaintiff's claim of post-employment economic losses (such as backpay and front pay) and whether the plaintiff mitigated those losses (e.g., by diligently looking for new work and new sources of income after separating from the defendant-employer).  Exhibit 5 (Daversa's amended subpoena on Prophet Exchange ("PE") seeking, among other things, Mr. Feighan's employment contracts with PE, personnel file, final paystub, etc.).  Because it is not disputed that Mr. Feighan is not seeking post-employment economic losses (including backpay and front pay) in this case, any effort by Daversa to try and use these post-employment documents to show at trial that he failed to "mitigate" any post-employment losses would be futile and irrelevant, and should be excluded.

### IV.   DAVERSA SHOULD NOT BE PERMITTED TO PROFFER MR. FEIGHAN'S SETTLEMENT WITH MR. BROWN, OR SETTLEMENT-RELATED COMMUNICATIONS, TO THE JURY

The Court recently permitted Daversa to take discovery of the settlement between Mr. Feighan and Mr. Brown, including the settlement agreement they executed and any communications and negotiations between the two men and/or their counsel relating to the agreement.  Minute Order of May 11, 2023.

Federal Rule of Evidence 408(a) prohibits a party from proffering evidence at trial regarding settlement and/or settlement-related communications if the purpose of the proffer is to try and convince the jury that the party making the proffer should not be held liable for the claim that has been asserted against it.  Fed. R. Evid. 408(a) ("Evidence [of compromise offers and negotiations] is not admissible – on behalf of any party – [ ] to [ ] disprove the validity [ ] of a

disputed claim"); *see Ferrell v. Fudge*, 2023 U.S. Dist. LEXIS 26711 at *21 (D.D.C. 2023) ("Rule 408 of the Federal Rules of Evidence provides that negotiations and offers of settlement are categorically inadmissible to prove [or disprove] liability."); *AU & Assocs. v. Howard Univ.*, 2016 U.S. Dist. LEXIS 55990 at *5-6 (D.D.C. 2016) (quoting *United States v. Davis*, 596 F.3d 852, 858 (D.C. Cir. 2010) ("Rule 408 . . . excludes evidence of settlement offers and negotiations when the evidence is 'offered to prove [or disprove] liability for, invalidity of, or amount of a claim.'").

Accordingly, the Court is asked to include in an order that Daversa is prohibited from proffering at trial any evidence of the settlement between Mr. Feighan and Mr. Brown, and any evidence of settlement-related communications between the two men or their respective counsel, for the ostensible purpose of convincing the jury to conclude that Daversa should not be held liable for Mr. Brown's hostile work environment of Mr. Feighan under Count One of the Amended Complaint, or for any other Count being tried to the jury.

Rule 408(a) further prohibits a party from proffering evidence at trial regarding settlement or settlement-related communications if the purpose of the proffer is to try and convince the jury that, should it be inclined to award a verdict for the other party, it should award a lesser sum of money than it otherwise would in the absence of the settlement. Fed. R. Evid. 408(a) ("Evidence [of compromise offers and negotiations] is not admissible – on behalf of any party – [ ] to [ ] disprove the [ ] amount of a disputed claim"); *see AU & Assocs.,* 2016 U.S. Dist. LEXIS 55990 at *5-6 (citing *Davis*, 596 F.3d at 858); *SEIU Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr., Inc.*, 153 F. Supp. 3d 363, 375 (D.D.C. 2016) (Rule 408 "declar[es] inadmissible 'a statement made during compromise negotiations about the claim' when a party seeks to 'disprove the . . . amount of a disputed claim'").

As one court succinctly stated:

> [Rule 408] was particularly designed to protect a plaintiff in a personal injury suit from the introduction of evidence that would inform the jury of the amount plaintiff received in settlement from other alleged tortfeasors, or the amount received by other claimants in settlement of their claims against the defendant, when the purpose of such evidence is to minimize the value of plaintiff's claim, or suggests that he has already received adequate compensation.

*Deville v. Frey*, 63 So. 3d 435, 438 (Ct. App. La. 2011).

Accordingly, the Court is asked to include in an order that Daversa is prohibited from proffering at trial any evidence of the settlement between Mr. Feighan and Mr. Brown, and any evidence of settlement-related communications between the two men or their respective counsel, for the ostensible purpose of convincing the jury to award Mr. Feighan a lesser sum of money for Count One, or on any other Count being tried to the jury, than it otherwise would in the absence of the settlement between Mr. Feighan and Mr. Brown.

Rule 408(a) further prohibits a party from proffering evidence at trial regarding settlement or settlement-related communications if the purpose of the proffer is to try and show that a testifying witness has made a statement at trial that is different, or contradictory, to what is stated in a settlement agreement and/or was stated during the course of compromise offers and negotiations. Fed. R. Evid. 408(a) ("Evidence [of compromise offers and negotiations] is not admissible – on behalf of any party – [ ] to impeach by a prior inconsistent statement or a contradiction"); *see Employment Law Grp., P.C. v. Brady*, 2022 U.S. Dist. LEXIS 1202 at *12 n. 6 (D.D.C. 2022) (Rule 408 prohibits evidence of settlement "if offered to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement."); *Lockheed Martin Corp. v. United States*, 2013 U.S. Dist. LEXIS 67399 at *20 n. 15 (D.D.C. 2013) ("Rule 408 indicates that offers to settle a claim are inadmissible to prove or disprove the

amount or validity of a claim 'or to impeach by a prior inconsistent statement or contradiction . . .'").

Accordingly, the Court is asked to include in an order that Daversa is prohibited from proffering at trial any evidence of the settlement between Mr. Feighan and Mr. Brown, and any evidence of settlement-related communications between the two men or their respective counsel, for the ostensible purpose of showing a testifying witness at trial – including Mr. Brown – has made a statement at trial that is different, or contradictory, to what is stated in the settlement agreement between Mr. Feighan and Mr. Brown and/or was stated during the course of compromise offers and negotiations between the two men and/or their respective counsel.

Rule 408(b) does allow a court to consider admitting evidence of settlements and/or settlement-related communications "for another purpose, such as proving a witness's bias or prejudice [e.g., Mr. Brown], negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  Fed. R. Evid. 408(b).  However, parties sometimes use subpart (b) of Rule 408, claiming the proffered evidence on settlement is needed to illuminate the bias or prejudice of a witness or for "another purpose," when in fact the ulterior motive is to do an end-run of subpart (a) of the rule.  *See, e.g., Ho v. Garland*, 2022 U.S. Dist. LEXIS 168185 at *34-35 (D.D.C. 2022) (rejecting the plaintiff's contention he was proffering the settlement offer he was given to "prove a witness's bias or prejudice" when in fact he was seeking to use the settlement offer to help prove his retaliation claim); *see also Rhoads Indus. v. Shoreline Found., Inc.*, 2022 U.S. Dist. LEXIS 15881 at *45 (E.D. Pa. 2022) ("Despite Defendants' insistence this information is necessary to their mitigation defense, we do not see how this justification could validly constitute 'another purpose' under Rule 408 without implicating its ban on settlement evidence for 'proving or disproving the validity or amount of

the disputed claim.'"); *Young v. Allsteel Press Co.*, 539 F. Supp. 193, 195 (E.D. Pa. 1982) ("It is difficult to understand how [the defendant] is not [ ] seeking to introduce such evidence to mitigate the amount of any possible jury award by informing the jurors that plaintiff has already received a measure of compensation for his injuries . . . [I]t is clear that [the defendant's] argument is merely an attempt to circumvent the express prohibition of Rule 408."); *Deville,* 63 So. 3d at 439 (reversing the trial court's admission of a prior settlement because it was clear from the verdict amount that the purpose and effect of the proffer was to have "the jury believe[] [the plaintiff] had already received appropriate compensation from the prior settlement. We cannot rule out the real probability that the prior settlement amount unfairly prejudiced the verdict in this case.").

Accordingly, the Court is respectfully asked to scrutinize any purported reasons Daversa may offer for attempting to proffer the settlement between Mr. Feighan and Mr. Brown, and any related communications, to the jury at trial.  Moreover, in a recent email to the Court, Daversa's counsel attempted to justify its discovery of the settlement between Mr. Feighan and Mr. Brown on the ground that "[u]nder District of Columbia law, Daversa is entitled to an offset of potential damages based on the settlement with a co-defendant," citing *Paul v. Bier*, 758 A.2d 40 (D.C. 2000).  But however the issue of offset plays out in this case, it is important to emphasize, as the Court did in *Paul*, that the subject of offset is one for this Court and counsel to have *after* the jury renders its verdict in this case, and has nothing to do with the Rule 408 evidentiary question of whether the jury should be informed during the trial of the existence and/or amount of the settlement between Mr. Feighan and Mr. Brown (and attendant communications and/or other particulars of the settlement).

**CONCLUSION**

For the reasons stated, Mr. Feighan's Pretrial Motion in Limine should be granted and the proposed Order that accompanies his Pretrial Motion should be entered.[10]


June 5, 2023                                          Respectfully submitted,

                                                     */S/ CARLA D. BROWN*
                                                     Carla D. Brown, DC Bar No. 474097
                                                     Peter C. Cohen, DC Bar No. 413247
                                                     CHARLSON BREDEHOFT COHEN
                                                       BROWN & NADELHAFT, P.C.
                                                     11260 Roger Bacon Drive, Suite 201
                                                     Reston, Virginia 20190
                                                     cbrown@cbcblaw.com
                                                     (703) 318-6800 Telephone
                                                     (703) 318-6808 Facsimile

                                                     *Counsel for Plaintiff, Vaughn Feighan*

---

[10] Mr. Feighan will propose a verdict form as part of the Joint Pretrial Statement due June 30, 2023. As noted in Mr. Feighan's Pretrial Motion in Limine, because undersigned counsel is not privy at this time to all of the evidence and testimony that Daversa intends to proffer at trial, undersigned counsel reserves the right to request permission from the Court to file additional motions in limine as appropriate.

## CERTIFICATE OF SERVICE

I hereby certify on the 5th day of June 2023, I electronically filed the foregoing with the Clerk of court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Stephen M. Silvestri, Esq.
Charles J. Kresslein, Esq.
JACKSON LEWIS P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, Maryland 21209
Phone:  (410) 415-2000
Fax:  (410) 415-2001
Stephen.silvestri@jacksonlewis.com
Charles.kresslein@jacksonlewis.com
*Counsel for Defendant Resource Systems Group Inc. t/a Daversa Partners*

John W. Cannavino, Esq.
CUMMINGS & LOCKWOOD LLC
6 Landmark Square
Stamford, CT  06901
Phone:  (203) 351-4447
Fax: (203) 708-3849
jcannavino@cl-law.com

*Counsel for Defendant Resource Systems Group Inc. t/a Daversa Partners*

*/S/ CARLA D. BROWN*
Carla D. Brown, DC Bar No. 474097
CHARLSON BREDEHOFT COHEN
   BROWN & NADELHAFT, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
cbrown@cbcblaw.com
(703) 318-6800 Telephone
(703) 318-6808 Facsimile

*Counsel for Plaintiff, Vaughn Feighan*