IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VAUGHN FEIGHAN,<br><br>        Plaintiff,<br><br>v.<br><br>DAVERSA PARTNERS, *et al.*,<br><br>        Defendants. | Civil Action No. 20-cv-3759-BAH |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE IRRELEVANT AND PREJUDICIAL EVIDENCE AND TO PRECLUDE CERTAIN ASSERTIONS OF TANGIBLE EMPLOYMENT ACTION

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

RELEVANT RULES AND STANDARDS. ................................................................................. 2

ARGUMENT ................................................................................................................................. 4

    A.    The Court Should Exclude All Evidence of Alleged Acts Involving RSG That Have No Relation to Feighan's Claims and Are Prejudicial to RSG. ..................... 4

        1.    The Court Should Redact Portions of Casey Marx's Exit Interview Email That Involve Statements That Are Unrelated To Feighan's Relationship with Brown. .................................................................................................... 5

        2.    The Court Should Exclude False Testimony of an Alleged Hot Tub Incident Supposedly Involving Paul Daversa Because it is Irrelevant, Prejudicial and Hearsay. ........................................................................... 7

        3.    The Court Should Exclude Evidence of Consensual Relationships Between RSG Employees, Especially Including Former Partner Leah Scanlan, Because it is Irrelevant, Prejudicial and Hearsay. ........................ 9

        4.    The Court Should Exclude Evidence of Glassdoor Reviews Because It Is Irrelevant, Prejudicial and Hearsay. .......................................................... 10

        5.    The Court Should Exclude the Ski Photo Involving Brown and Daversa Because it is Misleading and Unduly Prejudicial to RSG. ....................... 12

    B.    The Court Should Exclude Evidence of Partners' Investments in Riverbend Ventures, LLC Excluded Because It Is Irrelevant and Prejudicial. ...................... 13

    C.    The Court Should Exclude Evidence of Alleged Retaliation Because the Claim Was Dismissed at Summary Judgment. .............................................................. 15

    D.    The Court Should Preclude Feighan from Asserting that RSG Ending Feighan's Employment Before the End of his Resignation Notice Period was a Tangible Employment Action. ....................................................................................... 16

CONCLUSION ............................................................................................................................ 18

Defendant Resource Systems Group Inc. t/a Daversa Partners ("RSG") submits this Motion in Limine to preclude Plaintiff Vaughn Feighan ("Feighan") from offering evidence that is not relevant and is more prejudicial than probative, and to clarify the purpose and scope of relevant evidence to be offered at trial with redactions or other limitations.

Specifically, RSG seeks to exclude irrelevant and prejudicial evidence of several misleading and unrelated acts involving RSG that have nothing to do with sexual harassment, including: (i) portions of a former employee's email that was critical of RSG, (ii) an alleged incident in which Paul Daversa sat naked in a hot tub with a client, which did not happen, (iii) a former RSG partner's consensual "affair" with another employee, (iv) online Glassdoor reviews of RSG posted by two former employees that had nothing to do with Feighan or sexual harassment, and (v) a misleading photo that appears to depict Paul Daversa and Brown simulating oral sex on a ski slope but does not actually depict that.

In addition, RSG seeks to exclude evidence of RSG partners' investments in an affiliate investment pool, which has nothing to do with this case. RSG also seeks to exclude evidence of alleged retaliation by RSG against Feighan's father during the lawsuit, which the Court has dismissed from the case. Finally, RSG seeks to preclude Feighan from asserting that RSG's action of ending his employment before the conclusion of his notice period constituted a "tangible employment action" under the applicable standards of addressing claims of supervisory harassment.

## PRELIMINARY STATEMENT

Feighan claims he was subjected to a hostile work environment based on his sex and sexual orientation in violation of the District of Columbia Human Rights Act ("DCHRA") (Count I), and that RSG was negligent in retaining and failing to supervise the alleged harasser (Counts V and VI), Brown, which resulted in RSG's intentional infliction of emotional distress on Feighan (Count

VIII). Feighan also alleges he is owed unpaid bonuses under the District of Columbia Wage Payment and Collection Law ("DCWPCL") (Count VII).

Defendant RSG disputes that it is liable to Feighan under any of these claims. It is undisputed that RSG did not know about Feighan's allegations against Brown until after Feighan resigned, since Feighan intentionally did not report them to management during his employment. Once RSG learned of Feighan's allegations after he voluntarily resigned, it promptly suspended Brown and then forced him to resign.

It appears to be Feighan's trial strategy to make this case about salacious allegations involving events that have nothing to do with the issues in this case, in order to simply make RSG look bad and turn the jury against the company. Nevertheless, the principal issues in the case are whether RSG knew about Feighan's allegations against Brown, whether RSG took prompt and effective action when it learned about them, and whether Feighan was entitled to a bonus. RSG's instant motion focuses the trial on the proper issues in this case and prevents Feighan from confusing and distracting the jury with scandalous facts that have nothing to do with the case.

## RELEVANT RULES AND STANDARDS.

"In evaluating the admissibility of proffered evidence on a pretrial motion in limine the court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to Federal Rules of Evidence 401 and 402." *Klotzbach-Piper v. AMTRAK*, Civil Action No.: 18-1702, 2022 U.S. Dist. LEXIS 186072 *5 (D.D.C. Oct. 12, 2022) citing *Daniels v. District of Columbia*, 15 F. Supp. 3d 62, 66 (D.D.C. 2014). See also *Jennings v. Thompson*, 792 F. Supp. 2d 7, *10-11 (D.D.C. July 23, 2011) (excluding evidence of a prior arrest and conviction because it was not relevant to the negligence claim at issue).

2

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Klotzbach-Piper*, 2022 U.S. Dist. LEXIS 186072 *5-6, citing Fed. R. Evid. 401.

Relevant evidence is admissible unless otherwise provided by the U.S. Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the U.S. Supreme Court. *Klotzbach-Piper*, 2022 U.S. Dist. LEXIS 186072 *6, citing Fed. R. Evid. 402. "Irrelevant evidence is not admissible." *Id*.

"The burden is on the introducing party to establish relevancy as well as admissibility." *Klotzbach-Piper*, 2022 U.S. Dist. LEXIS 186072 *6, citing *Corrigan v. Glover*, 254 F. Supp. 3d 184, 191 (D.D.C. 2017).

To the extent that Plaintiff seeks to offer any evidence or testimony beyond specific facts of his claims of harassment, negligent supervision, intentional infliction of emotional distress, or wage claims, the Court should exclude such evidence because it is not relevant to the resolution of Plaintiff's claims.[1]

Evidence that is relevant, however, should still be considered for admission or exclusion under FRE 403. FRE 403 provides that a court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Klotzbach-Piper*, 2022 U.S. Dist. LEXIS 186072 *6, citing Fed. R. Evid. 403. *See also United States ex rel. Scutellaro v. Capitol Supply, Inc.*, No. 10-1094, 2017 U.S. Dist. LEXIS 153654 *3-5 (D.D.C. Sept. 20, 2017) (excluding references to treble damages and penalties because it could cause the jury to adjust its damages award lower); *Jennings v. Thompson*, 792 F. Supp. 2d 1, *9

---

[1] Both parties intend to offer expert opinion evidence based on the facts presented at trial. This motion does not seek to exclude expert testimony.

3

(D.D.C. April 18, 2011) (evidence of overpopulation of apartment, tenant's general destructive behavior and alcohol and drug use should be excluded from negligence case arising from damaged balcony because the evidence is minimally relevant and substantially outweighed by the danger of unfair prejudice).

## ARGUMENT

**A.   The Court Should Exclude All Evidence of Alleged Acts Involving RSG That Have No Relation to Feighan's Claims and Are Prejudicial to RSG.**

In the course of this lawsuit, Feighan has raised allegations and has attempted to develop facts that have no bearing on Feighan's allegations of harassment against Brown, but rather are solely intended to make Paul Daversa and RSG look bad in the eyes of the jury. The Court must exclude all such evidence due to their lack of probative value and the prejudice that they could cause to RSG, as discussed below.

As noted above, Feighan has made clear throughout discovery that he will seek to introduce evidence at trial regarding unrelated allegations of discrimination, harassment and/or poor leadership for the sole purpose of making RSG look bad in general, as opposed to supporting or refuting the material issues at trial. That is the definition of prejudicial evidence that should be excluded under the Federal Rules of Evidence. This Court should not allow Feighan to hijack this trial and turn it into a sideshow about whether RSG's partners are good or bad people, or whether other employees had unrelated and unproven bad experiences at the company.

This trial is entirely about when RSG learned about Feighan's allegations against Brown, whether RSG acted appropriately thereafter and whether Feighan was entitled to a bonus. The numerous highly prejudicial issues Feighan seeks to introduce are hotly disputed, and if he is allowed to admit evidence on these irrelevant issues, each will become a separate mini-trial about whether the incidents occurred in the first place. This will do nothing but waste the jury's time,

and the Court's time, on incidents that have no bearing on the ultimate resolution of Feighan's claims. As a result, the Court should categorically exclude any evidence relating to allegations of harassment, discrimination and/or poor management unrelated to Feighan's claims in this case. Further, this Court should exclude the specific unrelated allegations identified below.

### 1. The Court Should Redact Portions of Casey Marx's Exit Interview Email That Involve Statements That Are Unrelated To Feighan's Relationship with Brown.

On May 19, 2020, shortly before Feighan resigned from RSG on June 30, 2020, a departing co-worker, Casey Marx, sent a lengthy seven-page email that provided positive and negative feedback about her RSG employment, including compensation, work hours, leadership and Brown's management of the D.C. office. **(Exhibit 1).** Feighan is expected to introduce this email to show that RSG had notice of Brown's harassment of Feighan during his employment, even though the email says very little about Brown's relationship with Feighan and says nothing about inappropriate conduct of a sexual nature. The Court should allow RSG to redact most of the email, as described below, because most of the email is unrelated to Brown's relationship with Feighan and has no probative value of the allegations of harassment. Marx's general criticism of RSG's workplace unrelated to harassment would be unduly prejudicial to RSG because it would cause the jury to believe the company was a bad place to work in general.

Marx's email gave candid positive and negative feedback about her experiences at RSG, including compensation, work hours, leadership and Brown's management of the D.C. office in general. (*Id.*) It is carefully structured into an outline with headings and subheadings. Most of her critique of Brown was unrelated to Feighan—for example, she stated that Brown did not give constructive feedback, was inconsistent and sometimes yelled at employees. (*Id.*) The only portion of the email that the Court should permit into evidence is the section on the second page, which begins by explaining the context of the discussion (i.e., how she discussed it with her

parents) and then, under the heading of "Areas of Improvement," subheading of, "Bruce," and sub-subheading of, "He does not know how to give constrictive feedback," described how Brown "call[ed] out" Feighan during team sessions and "air[ed] out his grievances to the entire office," and then states vaguely that Brown's treatment of Feighan was "not only unacceptable for a personal relationship, but it is utterly inappropriate for a working relationship." (*Id.*, p. DAVERA 031091). The permitted section should end with the next sentence, which states: "This makes everybody uncomfortable when Bruce does this. Vaughn is only one example." (*Id.*) This is the language the Court cited in its summary judgment opinion that creates an issue of fact on whether RSG was on notice of Brown's alleged sexual harassment of Feighan. (Docket No. 46 at 12-13.) Attached as **Exhibit 2** is RSG's proposed redaction of Marx's email.

The Court should exclude the remainder of Marx's email. While generally critical of RSG and/or Brown, the remainder has nothing to do with alleged harassment of Feighan. Much of it has nothing to do with Brown at all, and even other portions that mention Brown and Feighan do not relate to allegations of harassment. Rather, Marx alleges that: (i) Brown disclosed matters involving Marx's personal life to Feighan and was "prying" for information about Marx, and (ii) Brown once "screamed" at Feighan and Marx together during a Zoom call and wrongly blamed them for "something that didn't even happen." (Ex. 1, p. DAVERA 031093). These statements do not allege that Brown singled Feighan out for mistreatment.

The Court should exclude evidence of Marx's general criticism of RSG and Brown because it is likely to confuse the jury and would be overly prejudicial to RSG. The jury could confuse one employee's thoughts on Brown's harsh and objectionable management style with allegations of harassment, and it could seek to unfairly punish RSG for its management practices in general.

6

RSG is not on trial for Brown's or the company's management practices that are unrelated to Brown's alleged harassment of Feighan and the company's knowledge thereof.

To explain the redactions to the email, however, the Court should permit witnesses to testify generally that the email contains multiple opinions and complaints from Marx about RSG unrelated to Brown and Feighan.

### 2. The Court Should Exclude False Testimony of an Alleged Hot Tub Incident Supposedly Involving Paul Daversa Because it is Irrelevant, Prejudicial and Hearsay.

Feighan might attempt to introduce false evidence that Paul Daversa was naked in a hot tub with a client. In the Amended Complaint, Feighan alleged:

> Mr. Brown told Mr. Feighan that he had stripped into his underwear during the Partner offsite when he was drinking and went into the hot tub with the younger Managing Directors and Directors – Mr. Brown said it was acceptable as Mr. Daversa had engaged in similar conduct. He told Mr. Feighan that Mr. Daversa stripped naked with senior members of General Catalyst in a hot tub in Martha's Vineyard.

(ECF 26, ¶ 67). Feighan made the same assertion in a summary judgment affidavit. (ECF 39-21, ¶ 6).

This allegation involving Mr. Daversa is absolutely false. Mr. Daversa vehemently denies that he has ever been naked in a hot tub with any client or at any professional event at any time in any location (ECF 44-6, ¶ 2), and there is no other evidence that any such incident occurred. Neither Feighan nor Brown was present at the alleged incident. If Brown told Feighan about it, Brown must have invented it completely or heard it from someone else, who was making a false statement. There is no evidence in the record as to how he heard about it. Thus, any evidence of the alleged incident is double hearsay and should be excluded pursuant to Fed. R. Evid. 801(c)(2) ("Hearsay" means statement that party offers in evidence to prove the truth of matter asserted) and Fed. R. Evid. 802 (hearsay not admissible).

Also, evidence of this alleged incident (which did not happen) is not probative of whether Brown engaged in harassment of Feighan and is not relevant for any other reason. A manager consensually sitting naked in a hot tub with a client is materially different than workplace harassment (by someone else) and is irrelevant to whether Brown harassed Feighan. Testimony of the incident would serve no purpose other than to prejudice the jury against RSG by searing a distorted and unprofessional image of Mr. Daversa naked in the minds of the jury, which would negatively influence their perception of Mr. Daversa and RSG. Indeed, RSG believes that prejudicing the jury in that manner with false evidence is precisely what Feighan intends through this testimony.

Feighan might argue that hearing about this alleged incident justifiably excused his failure to report Brown's alleged harassment to RSG management, including Mr. Daversa, since Mr. Daversa himself engaged in and was comfortable with inappropriate conduct. Even if Feighan heard that Mr. Daversa consensually sat naked in a hot tub with a client—which is false—that has no probative value regarding Mr. Daversa's or other managers' receptiveness to employee complaints about workplace harassment by others, and did not reasonably excuse Feighan's failure to report. The D.C. Circuit and other courts have consistently held that a plaintiff is not excused from reporting harassment because he/she believes a complaint would be futile *See Taylor v. Solis*, 571 F.3d 1313, 1316, 1319 (D.C. Cir. 2008) (rejecting plaintiff's proffered excuse that harasser told her that no one would believe her and that the company would believe that she (plaintiff) was the problem, since "'failure [would have been] the only cost' to [the plaintiff] of reporting [the harasser]"); *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 267-68 (4th Cir. 2001) (rejecting employee's fear of retaliation and concern that report would be futile due to friendship between harasser and company president); *Harper v. City of Jackson Mun. Sch. Dist.*, 414 F. Supp.2d 595, 607-08 (S.D. Miss. 2005) (rejecting plaintiff's failure to report and failure to

8

cooperate with investigation due subjective fear of reprisal and belief that complaint would be futile), *aff'd*, 149 Fed. Appx. 295 (5th Cir. 2005). That is especially true in light of other evidence in the record that Feighan purposely concealed Brown's alleged harassment in consultation with his father in order to build a legal case against RSG.[2] Any slight probative value that such testimony might have on that subject would be far outweighed by the prejudice that RSG would suffer through its admission.

For these reasons, the Court should exclude all testimony and evidence that Paul Daversa purportedly sat naked in a hot tub with a client.

### 3. The Court Should Exclude Evidence of Consensual Relationships Between RSG Employees, Especially Including Former Partner Leah Scanlan, Because it is Irrelevant, Prejudicial and Hearsay.

Feighan might attempt to introduce evidence of consensual relationships between RSG employees. According to the Amended Complaint,

> Daversa was on notice and aware of its negligence in not having any identifiable HR department, or clear reporting procedures, or any mechanism to address, respond and investigate claims of sexual assault and harassment, since former Partner Leah Scanlan had an affair with a subordinate, even though her husband was working at Daversa at the same time.

(ECF 26, ¶ 90). Ms. Scanlan worked in RSG's Connecticut office, and she left RSG before Feighan was hired. (**Exhibit 3**, Martire Dep. at 101-03).

The Court should exclude any evidence of consensual relationships, including that of Ms. Scanlan, because this evidence is irrelevant, since "consensual affairs and unwelcome sexual harassment are entirely separate exploits, with distinct motivations and underlying conduct." *Stephens v. Rheem Mfg. Co.*, 220 F.3d 882, 885 (8th Cir. 2000) (upholding trial court's exclusion of consensual sexual affairs between employees in sexual harassment case). Additionally, this

---

[2] This evidence was discussed at length in RSG's summary judgment motion (ECF 36-1, p.11; ECF 36-2, ¶¶ 46-53) and will not be repeated here.

9

evidence is more prejudicial than probative. This would require a mini-trial about an admittedly consensual relationship between two former employees that had nothing to do with Feighan or Brown and did not constitute harassment. The alleged "affair" occurred years before Feighan was hired and in a different office than the D.C. office in which he worked. The jury might be confused if such evidence is admitted because people have negative feelings about infidelity, but it is not unlawful and does not constitute workplace harassment under nondiscrimination laws. For that reason, it is not probative of shortcomings in RSG's HR department or its harassment reporting procedures, contrary to the allegation in the Amended Complaint. Nevertheless, because of the negative perception that jurors might have about an adulterous relationship, any evidence of that matter would be unduly prejudicial to RSG.

For these reasons, the Court should exclude all evidence of the following:

1. any alleged consensual activity among RSG employees; and
2. any alleged affair involving Leah Scanlan.

**4.     The Court Should Exclude Evidence of Glassdoor Reviews Because It Is Irrelevant, Prejudicial and Hearsay.**

The Court should preclude all evidence of reviews of RSG on the Glassdoor website, including emails forwarding such reviews. Former employees posted at least two online Glassdoor reviews of RSG that were discussed in depositions in this case. Those Glassdoor reviews are attached as **Exhibits 4 and 5.** Feighan did not post either review, and neither review mentioned Feighan. One review was posted by former employee Casey Marx, and one was posted by former employee Josh Jackson. Those reviews contain some positive information but generally are critical of RSG's management, including such matters as micromanagement, long work hours and negative feedback from managers. Neither review contains any content about sexual harassment, and there is no allegation that either review put RSG on notice about Feighan's allegations (one was posted after he resigned).

10

The Court should preclude those Glassdoor reviews because they are hearsay statements made by third party witnesses who are not expected to testify at trial, and their content is unrelated to the facts and allegations in this case. Finally, they are prejudicial to RSG and could confuse the jury, as two former employees' thoughts on RSG's management style and workplace culture generally have nothing to do with this case but could cause jurors to have negative feelings about RSG.

Feighan has alleged that after he gave about 17 days' notice of his resignation, RSG ended his employment early (after about nine days)—*i.e.*, before the end of the notice period—and waived the remaining portion of his notice period because RSG believed that he posted one of the Glassdoor reviews. (Ex. 4). That fact does not prove any allegations of harassment or RSG's knowledge of it, and it has nothing to do with the issues in this case. Even if RSG did end Feighan's employment before the end of his notice period because it believed that he made derogatory comments about the company online, that is not probative of harassment. And because the Glassdoor review in question made no mention of harassment, it is not probative of RSG's knowledge of the allegations. Moreover, there is no need to introduce the Glassdoor post itself to establish that it might have played a role in the decision to waive part of the notice period.

Also related to the Glassdoor posts, Feighan falsely alleges in the Amended Complaint that it is "common practice for Mr. Daversa to ask his employees to write positive Glassdoor Reviews for him." (ECF 26, ¶ 85). That is absolutely untrue. The Court likewise should preclude any testimony about this unproven allegation because whether or not Mr. Daversa asked employees to write positive reviews has no bearing on any of the issues to be decided at trial. Any such evidence would simply be an effort to portray Mr. Daversa and his partners as dishonest and manipulative, and would be unfairly prejudicial to RSG. This is exactly the type of prejudice the Federal Rules of Evidence are meant to exclude.

11

### 5. The Court Should Exclude the Ski Photo Involving Brown and Daversa Because it is Misleading and Unduly Prejudicial to RSG.

RSG expects that Feighan will introduce into evidence a photo of Brown and Daversa on the ski slopes, in which it appears that one skier, Daversa, is simulating giving oral sex on the other skier, Brown (the "ski photo"). **(Exhibit 6).** Feighan has made much of the ski photo during this litigation and even pasted it into the body of his Opposition to RSG's Motion for Summary Judgment. (ECF 39, p.21). The Court should exclude the ski photo because it is extremely misleading and its probative value is far outweighed by the potential prejudice that RSG will suffer from its admission.

The ski photo has a very innocent story and does not depict a simulated act of oral sex, as Feighan states. As Paul Daversa explained in an affidavit provided to the Court with RSG's summary judgment briefing, on the day before RSG held a strategic planning leadership meeting at Jackson Hole, Brown and Daversa were skiing together, and they had an awkward collision, in which Daversa's head landed in Brown's lap, which was a complete accident. (ECF 44-6, ¶ 1). Later that day on the mountain, Brown and Daversa reenacted for others the manner in which they landed. (*Id.*) The others laughed, and someone took a photo of it. Brown and Daversa were not simulating a sex act. (*Id.*). Brown agreed, stating in deposition that the photo "appeared to be [oral sex] but wasn't" and that they "had re-enacted a picture of Paul and I on a ski trip." **(Exhibit 7**, Brown Dep., at 125). Brown had a copy of the photo on his phone, and at one point, he sent a copy of the photo to Feighan by text message because he thought it was funny. (*Id.* at 124-25; Ex. 6). Brown promptly realized that he should not have sent Feighan the photo, and he texted Feighan and apologized. (Ex. 6). Daversa did not know until after this lawsuit was filed that Brown had shared that photo with Feighan. (ECF 44-6, ¶ 1).

The photo is misleading in that it appears to the viewer that Daversa and Brown were simulating oral sex, when they were not doing so but rather were simply re-enacting a ski collision

12

that looked that way. Despite the innocent explanation, the photo is misleading and will confuse the jury in light of how it looks. It is prejudicial to RSG because the visual image of what appears to show—but does not show—Daversa simulating oral sex on Brown will unfavorably predispose the jury to RSG by placing the inaccurate mental image of oral sex in the mind of the jury, which is exactly what Feighan wants to accomplish. Moreover, the photo will require a mini-trial on what happened on the ski slopes, which is tangential to what happened in the workplace between Feighan and Brown.

Feighan might argue that the ski photo is relevant because it explains why he did not report Brown's harassment to Paul Daversa. As with the false hot tub incident described above, the innocent ski photo is not probative of Daversa's receptiveness to workplace complaints of harassment, since the subject matter is materially different and completely unrelated. Any slight probative value that the photo has is outweighed by the prejudicial effect that it would have on RSG, in light of its misleading appearance and the fact that Feighan intentionally concealed Brown's alleged misconduct from RSG pursuant to the direction of his father. The Court should exclude the ski photo from evidence. The Court also should preclude Feighan from testifying about the ski photo, since testimony about the photo simulating oral sex likewise would mislead the jury.

**B.      The Court Should Exclude Evidence of Partners' Investments in Riverbend Ventures, LLC Excluded Because It Is Irrelevant and Prejudicial.**

Feighan might attempt to introduce evidence about Riverbend Ventures LLC ("Riverbend"), an investment vehicle for RSG partners. Presumably, Feighan will introduce this evidence to portray that Brown is still "associated" with RSG through his investment, even though RSG forced him to resign. The Court should exclude any such evidence because it is not probative of any issues in the case, and it would be prejudicial to RSG.

13

Riverbend is an investment entity that is a subsidiary of RSG, in which some of RSG's partners participate. While he was employed with RSG, Brown invested approximately $200,000 in individual investments held in Riverbend, which he still owns even though he is no longer employed by RSG. (**Exhibit 8**, Daversa Dep., at 23-24; Ex. 7, Brown Dep., at 20-22). Feighan's counsel asked witnesses about Riverbend in depositions, and she sought other discovery about Riverbend, to which RSG continually objected.

Riverbend is not a party to this case, and it was not an employing entity of Feighan or Brown. As a first-year employee, Feighan was not eligible to invest in Riverbend, and there was no relationship between him and Riverbend. Riverbend and the investments in it are totally unrelated to any of the allegations in the case, including allegations of harassment, and they are not probative of any issues in this case. There is no evidence or even a suggestion that Riverbend played any role in any alleged conduct. In fact, there is no evidence that Brown even spoke to Feighan about Riverbend. Therefore, there is no scenario in which the financial investments of the partners of RSG would tend to make it any more or less likely that Feighan was subjected to harassment or emotional distress, or that RSG failed to pay Feighan wages or negligently supervised Brown.

Brown's continuing passive investment in Riverbend following his forced resignation does not alter any of the foregoing facts and conclusions. Any evidence of Riverbend will only confuse the jury because they will not understand the relationship between RSG and Riverbend, the nature of the passive investment, and its lack of relevance to this case. It also would unfairly portray both Paul Daversa and Brown as wealthy individuals. Paul Daversa is not a defendant in this case, and Brown is no longer a defendant, since he settled with Feighan.

Accordingly, the Court should exclude all evidence of the following:

       1. the existence of Riverbend, its purpose, value and its monetary holdings, including the holdings of any of its investors;

       2. Brown's participation in Riverbend; and

       3. Daversa's participation in Riverbend.

### C. The Court Should Exclude Evidence of Alleged Retaliation Because the Claim Was Dismissed at Summary Judgment.

Feighan asserted a claim of retaliation in his Amended Complaint (ECF 26), which was dismissed at summary judgment. (ECF 46). The retaliation claim alleged that RSG retaliated against Feighan for filing this lawsuit by targeting Feighan's family members during discovery, including by issuing a subpoena to his father's business—for which Feighan worked and which RSG believed provided financial services to RSG. The retaliation claim also alleges that RSG retaliated by having RSG's counsel suggest that it might pursue a legal claim against his father for breach of fiduciary duty because Feighan's father allegedly had a business relationship with RSG and failed to report Feighan's harassment allegations to RSG. (ECF 46, p. 23).

This Court should preclude Feighan from offering any testimony and evidence that RSG has retaliated against Feighan in any way during this lawsuit. The Court already considered and dismissed the retaliation claim because the alleged comment was a mere suggestion of a future claim, which would not dissuade a reasonable worker from filing a lawsuit. (*Id.*, p. 24.) Any issuance of a subpoena or other discovery at Feighan's father was a lawful and legitimate use of the discovery process, as Feighan's father is a witness in this case in numerous respects—*i.e.*, he has knowledge of Feighan's alleged mental injuries and ability to work, since he has employed his son since he resigned from RSG, and he provided a recording device to and advised his son in connection with Brown's treatment of him. The allegations of retaliation are not relevant to any of Feighan's remaining claims, and introduction of any such evidence would be prejudicial

15

because it would imply to the jury that RSG was trying to intimidate Feighan through his father, which theory was already rejected.

**D.     The Court Should Preclude Feighan from Asserting that RSG Ending Feighan's Employment Before the End of his Resignation Notice Period was a Tangible Employment Action.**

On June 30, 2020, Feighan told RSG (through Brown) that he was resigning from RSG, and he stated that he intended to work until July 17, 2020, which was to be his final intended day of employment. On July 9, 2020, nine days into his 17-day notice period, RSG notified Feighan that it was ending his employment effective immediately, thereby waiving the remainder of his notice period. Mr. Daversa explained in deposition that they ended his employment early because Feighan told Brown and his co-workers that he was weighing three job offers, one of which was potentially competitive to RSG. (Ex. 8, Daversa Dep. at 96). The Court should preclude Feighan from asserting that RSG's decision to end his employment before the end of his notice period was a tangible employment action.

Under the standards of employer liability for supervisory harassment set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries Inc. v. Ellerth*, 524 U.S. 742 (1998), the employer is automatically liable if the plaintiff suffered a "tangible employment action" as a result of the harassment. *Ellerth*, 524 U.S. at 761. Courts have routinely recognized that giving notice of one's resignation is a "courtesy that the employee extends to the employer," *Wynn v. Paragon Sys.*, 301 F. Supp.2d 1343, 1354 (S.D. Ga. 2004), and that an employer's decision to decline that courtesy and to end the employment relationship before the conclusion of the notice period is not a tangible employment action under *Faragher/Ellerth*. *See Spearman v. Rehab. Ctrs., LLC*, 2019 U.S. Dist. LEXIS 56202, *8 (N.D. Miss. 2019) ("[F]ollowing acceptance of a voluntary resignation, an employer's refusal to allow an employee to complete a two-week notice period is not an adverse employment action."); *Phifer v. City of Rocky Mt.*, 2010 U.S. Dist. LEXIS 103816,

16

*41 (E.D.N.C. 2010) ("[A] decision to accept a resignation immediately, and waive a notice period that would have required an employee to work for an additional, limited period of time, does not constitute an adverse employment action."); *Wynn*, 301 F. Supp.2d at 1354 (same).

Indeed, RSG raised this argument in its summary judgment motion (ECF 36-1, pp. 20-21), and Feighan's opposition to that motion did not challenge or even address that argument. (ECF 39, pp. 6-17). This Court has long recognized that a plaintiff's failure to oppose an issue in opposition to the defendant's dispositive motion acts as a concession to that argument. *See Saunders v. Mills*, 172 F. Supp.3d 74, 92 (D.D.C. 2016) (dismissing certain discrimination claims because plaintiff's failure to address defendant's argument for the dismissal of those claims was a concession by plaintiff); *Hopkins v. Women's Div.*, 284 F. Supp.2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 98 Fed. App'x 8 (D.C. Cir. 2004); *Buggs v. Powell*, 293 F. Supp.2d 135, 141 (D.D.C. 2003) (same). Accordingly, the Court's summary judgment opinion did not address whether RSG's shortening of the notice period constituted a tangible employment action, since it was not relevant to the Court's decision. (ECF 46, pp. 28-31).

In accordance with the foregoing case law and because Feighan has conceded this point, the Court should preclude Feighan from asserting that RSG's decision to end his employment halfway through his notice period was a tangible employment action under *Faragher/Ellerth*.

## **CONCLUSION**

For the foregoing reasons, RSG respectfully requests that its Motion in Limine be GRANTED.

June 5, 2023                                          Respectfully submitted,

/s/ *Stephen M. Silvestri*
Stephen M. Silvestri (Bar No. MD0026)
Charles J. Kresslein (Bar No. 453509)
JACKSON LEWIS P.C.
2800 Quarry Lake Drive, Suite 200
Baltimore, Maryland 21209
Phone: (410) 415-2000
Fax: (410) 415-2001
stephen.silvestri@jacksonlewis.com
charles.kresslein@jacksonlewis.com

*Counsel for Defendant*
*Resource Systems Group Inc. t/a Daversa Partners*

4867-3899-7096, v. 2

18