# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VAUGHN FEIGHAN,

        Plaintiff,

        v.

RESOURCE SYSTEMS GROUP INC.,

        Defendant.

Civil Action No. 20-03759 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

In advance of the trial scheduled to begin on September 11, 2023, in this employment discrimination case, plaintiff Vaugh Feighan has moved for judgment as a matter of law on Count One of the five claims in the Amended Complaint, ECF No. 26, alleging that defendant Resource Systems Group Inc. ("RSG") violated the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.0, *et seq.*, *see* Pl.'s Mot. J. Matter L. ("Pl.'s Count 1 Mot."), ECF No. 49; *see also* Pl.'s Mem. Supp. Mot. J. Matter L. ("Pl.'s Count 1 Mot. Mem."), ECF No. 49, and also seeks to exclude a laundry list of sixteen separate categories of evidence, *see* Pl.'s Pretrial Mot. *in Limine* ("Pl.'s MIL"), ECF No. 50; *see also* Pl.'s Mem. Supp. Pretrial Mot. *in Limine*, ECF No. 50 ("Pl.'s MIL Mem.").[1] The factual background and procedural history of this case has been fully detailed in this Court's prior decision granting in part and denying in part defendant's motion for summary judgment, Order (March 30, 2023), ECF No. 36, and as such will be incorporated by reference

---

[1] Defendant also has filed its own pretrial motions, *see* Def.'s Mot. *in Limine* to Bifurcate Trial on the Amount of Punitive Damages, ECF No. 52; Def.'s Mot. to Exclude Irrelevant and Prejudicial Evidence, ECF No. 53, which will be addressed separately.

below.  *See Feighan v. Res. Sys. Grp. Inc.*, No. CV 20-03759 (BAH), 2023 WL 2707520 (D.D.C. Mar. 30, 2023).

For the reasons outlined below, plaintiff's motion for judgment as a matter of law on Count One is denied, and plaintiff's motion *in limine* is granted in part and denied in part.

## I.  Plaintiff Is Not Entitled to Judgment as a Matter of Law on Count One

Count One of the Amended Complaint claims that plaintiff was subjected to a hostile work environment based on his sexual orientation while employed by defendant, *Feighan*, 2023 WL 2707520 at *12–13, in violation of the DCHRA, which bars "discriminat[ing] against any individual, with respect to his compensation, terms, conditions, or privileges of employment . . . in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his or her status as an employee" "wholly or partially for a discriminatory reason based upon the actual or perceived . . . sex . . . [or] sexual orientation . . . of [that employee]," D.C. Code Ann. § 2-1402.11(a). A viable DCHRA hostile work environment claim requires demonstrating "(1) that [plaintiff] is a member of a protected class, (2) that [] he has been subjected to unwelcome harassment, (3) that the harassment was based on membership in the protected class, and (4) that the harassment is severe and pervasive enough to affect a term, condition, or privilege of employment." *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 888 (D.C. 2003) (cleaned up) (quoting *Daka, Inc. v. Breiner*, 711 A.2d 86, 92 (D.C. 1998)). Defendant's motion for summary judgment on Count One was previously denied upon finding that genuine issues of material fact existed as to whether plaintiff suffered a tangible employment action, and, if not, whether defendant is entitled to the affirmative defense articulated in *Faragher v. Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998),

that absolves an employer of vicarious liability for the hostile work environment suffered by an employee due to the conduct of a supervisor.  *Feighan*, 2023 WL 2707520, at *13–16.[2]

Despite this holding, plaintiff now moves for judgment as a matter of law on Count One, contending that (1) defendant conceded in summary judgment briefing plaintiff's claim to being subject to a hostile work environment while employed at RSG; and (2) the *Faragher-Ellerth* defense is inapplicable to DCHRA claims as a matter of law.  Pl.'s Count 1 Mot. Mem. at 1–2. Plaintiff's first contention is incorrect, and his second contention mischaracterizes the law. Defendant's assumption for purposes of summary judgment briefing concerning the existence of a hostile work environment does not amount to a concession for the purposes of trial, and caselaw establishes that, in accordance with Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, the *Faragher-Ellerth* affirmative defense is available to employers for claims under the DCHRA.  Accordingly, plaintiff's motion is denied.

### A.  Defendant Has Not Conceded the Existence of a Hostile Work Environment

Seizing on defendant's decision not to contest at summary judgment that plaintiff suffered from a hostile work environment while employed at RSG, plaintiff leaps to the conclusion that this amounts to defendant's concession of each element of plaintiff's hostile work environment claim in Count One.  Pl.'s Count 1 Mot. Mem. at 7–9.  Observing that this Court noted, twice, that defendant "was not contesting the existence of a hostile work environment under the DCHRA," *id.* at 9; *see also Feighan*, 2023 WL 2707520, at *12 (making same observation), and that defendant nonetheless "remained silent, not disputing, challenging, or seeking to correct the

---

[2]        To prove the critical "tangible employment action," plaintiff must establish, first, that  "he suffered 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits,'" *Feighan*, 2023 WL 2707520, at *13, and, second, "establish the requisite link between a supervisor's injurious conduct in the workplace and the employing enterprise; it must be an action *done by the supervisor* whose conduct has generated the employee's claim," *id.* (cleaned up).  This material factual dispute also implicates the availability of defendant's asserted affirmative defense.

Court's statements, via a [Federal Rule of Civil Procedure] 60 motion, or in any other way," Pl.'s Count 1 Mot. Mem. at 9, plaintiff posits that defendant has conceded, for the purpose of trial, that plaintiff's supervisor, Bruce Brown, subjected plaintiff to a hostile work environment based on sexual orientation under the DCHRA, *id.*  This is a leap way too far.

Plaintiff misapprehends the purpose and effect of not contesting an issue at summary judgment.  Summary judgment may properly be granted only when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a), and thus, if genuine issues of material fact plainly exist in the record as to a claim or an element of a claim, moving for summary judgment on that claim is not "warranted by existing law" or even "by a nonfrivolous argument for . . . establishing new law," FED. R. CIV. P. 11(b)(2).  Here, for example, "a reasonable jury could conclude [that Brown's] conduct adversely altered the conditions of plaintiff's employment" and find "Brown's undisputed interactions with plaintiff, both verbally and physically inappropriate and abusive." *Feighan*, 2023 WL 2707520, at *12.  On this record, defendant rightly did not "contest[] that plaintiff suffered from a hostile work environment during his employment" because the Rule 56(a) standard was not satisfied.  *Id.*  Plaintiff urges that defendant's recognition of a factual dispute sufficient to defeat summary judgment in pretrial motions be deemed a concession of fact for purposes of trial, but that is neither fair nor warranted.

The Fifth Circuit recently reached the same conclusion in *Britt v. Mississippi Farm Bureau Causality Insurance Co.*, No. 22-60094, 2022 WL 17443734 (5th Cir. Dec. 6, 2022), reversing the district court's finding that defendants waived an element of plaintiff's Title VII claim for the purposes of trial by not contesting the element at summary judgment.  *Id*. at *2.  On interlocutory appeal, the Fifth Circuit held that the defendants "were not required to press their claim at summary

judgment to preserve it for trial," *id.,* explaining that Rule 56(a) "is not a penny contrivance to take unwary litigants into its tolls and deprive them of a trial," *id.* (quotation marks and citation omitted). The court soundly reasoned that "litigants are not required to move for summary judgment on every claim," nor are they "required to move for summary judgment *at all*," *id.* (emphasis in original), and thus that defendants' "decision not to raise this issue in its motion for summary judgment does not relieve [the plaintiff] of [her] burden . . . to prove all elements of her claims at trial." *Id.*

The same holds true here: Defendant may contest at trial whether plaintiff was subject to a hostile work environment even though this aspect of plaintiff's DCHRA claim was not disputed at summary judgment.

### B.   The *Faragher-Ellerth* Affirmative Defense Is Available Under the DCHRA

Plaintiff's second argument—that the *Faragher-Ellerth* defense is unavailable in DCHRA cases, Pl.'s Count 1 Mot. Mem. at 9–13—misconstrues D.C. law.  To be sure, the D.C. Court of Appeals "is the final arbiter of the law of the District of Columbia," which is the substantive law governing this dispute, *id.* at 10, and the D.C. Court of Appeals only adopts precedents under Title VII in construing the DCHRA "when appropriate," *id.* at 12 (quoting *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 888 n.31 (D.C. 1998)).  Yet, contrary to the conclusion urged by plaintiff, the D.C. Court of Appeals has never rejected the *Faragher-Ellerth* defense nor held this defense to be unavailable under the DCHRA.  By contrast, the D.C. Circuit and Judges on this Court have applied the *Faragher-Ellerth* framework to DCHRA claims.  *See, e.g.*, *Jones v. D.C. Dep't of Corr.*, 429 F.3d 276, 278–79 (D.C. Cir. 2005) (analyzing DCHRA and Title VII claims using the same standards); *Done v. D.C.*, No. 1:19-CV-01173 (CJN), 2023 WL 3558038, at *6-8 (D.D.C. Feb. 14, 2023) (same); *Craig v. D.C.*, 74 F. Supp. 3d 349, 369 (D.D.C.

2014) (same); *Byrd v. D.C.*, 807 F. Supp. 2d 37, 57-58 (D.D.C. 2011) ("Because it is well-established that the DCHRA and Title VII employment discrimination actions are evaluated under the same legal standard, the following analysis applies to both claims where implicated."); *Sorrell v. District of Columbia*, 252 F.R.D. 37, 41 (D.D.C. 2008) (same).  The reason for importing the *Faragher-Ellerth* framework applicable in Title VII cases to DCHRA cases is simple: "The anti-discrimination provisions of both statutes are substantially similar."  *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 n.17 (D.C. 1993).

Plaintiff's argument that the *Faragher-Ellerth* affirmative defense would be unavailable to defendant on Count One primarily rests on reading the tea leaves in two D.C. Court of Appeals' decisions addressing the DCHRA.  *See* Pl.'s Count 1 Mot. Mem. at 11 (citing *Howard University v. Best*, 484 A.2d 958, 982-83 (D.C. 1984) and *Daka, Inc. v. Breiner*, 711 A.2d 86, 94 (D.C. 1998)).  Yet, both cited decisions were issued before the Supreme Court's explications of the affirmative defense in *Faragher* and *Ellerth*.  Moreover, nothing in the reasoning of those two D.C. Court of Appeals' decisions is inconsistent with or supports rejection of the *Faragher-Ellerth* framework in applying the DCHRA.

Starting with *Howard University v. Best*, the D.C. Court of Appeals there mulled whether the plaintiff's employer could be held liable on a DCHRA claim for hostile work environment based on sex for the actions of the supervisor, whom plaintiff claimed sexually harassed her.  The court concluded that the plaintiff suffered a tangible employment action—her supervisor ended her employment and had authority to make such employment decisions on behalf of the employer—so strict liability was imposed on the employer.  *Id.* at 983–84 ("There can be no doubt, then, that the [supervisor] had a critical role in personnel affairs and as the evidence indicates, [the supervisor] used his role, with the full knowledge of and acceptance by, the [employer], to make

the final decision not to renew [plaintiff's] contract.  Accordingly, upon plaintiff's establishing a case of sexual harassment at a new trial, the jury should be instructed that the [employer] is to be held liable for such harassment.") (citation omitted)).  Similarly, under the *Faragher-Ellerth* framework, defendant can only resort to this affirmative defense upon showing plaintiff did not suffer a tangible employment action.

The same holds true for *Daka, Inc. v. Breiner*, which reiterated the D.C. Court of Appeals' reliance on Title VII caselaw as a guide for interpreting the DCHRA. 711 A.2d at 94 ("We note first that this court, in deciding issues arising under the DCHRA, consistently relies upon decisions of the federal courts in Title VII cases as particularly persuasive authority.").  The issue of whether the employer could be held vicariously liable for the alleged harassment by a supervisor was not an issue on appeal in that case.  *Id.* at 92 n.15 ("In this case, however, no contention is made that [the supervisor's] conduct is not attributable to [the employer], nor could [the employer] make such an argument on this record.").  In any event, just as in *Best*, the plaintiff suffered a tangible employment action because the alleged harasser was the plaintiff's supervisor and terminated his employment, so holding the *Daka* employer strictly liable is consistent with *Faragher-Ellerth*.

Defendant thus retains the ability to assert the affirmative defense outlined in *Faragher* and *Ellerth* in response to plaintiff's claims under the DCHRA.  Accordingly, plaintiff's motion for judgment as a matter of law in Count One is denied.[3]

## II.    PLAINTIFF'S MOTION *IN LIMINE*

Plaintiff's extensive motion *in limine* seeks the exclusion at trial of sixteen categories of evidence, each of which is discussed *seriatim*.  In short, while plaintiff's requests to exclude evidence and testimony of plaintiff's drug use, defendant's generalized workplace culture and

---

[3]     Given that plaintiff's motion is denied on the merits, defendant's alternative argument that this motion be stricken as untimely is denied as moot.  *See* Def.'s Opp'n to and Mot. to Strike Pl.'s Mot. at 8, ECF No. 58-1.

commitment to diversity, and plaintiff's post-employment documents are granted, the remainder of plaintiff's motion is denied.

### A.  Legal Standard

The Supreme Court has recognized that, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *see also Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (noting that while procedural rules "make no provision, for example, for the power of a judge to hear a motion *in limine*" such procedural devices are used by trial courts "around the country [] every day in service of [Federal Rule of Civil Procedure] 1's paramount command: the just, speedy, and inexpensive resolution of disputes.").  Pretrial motions *in limine* help to ensure that, "[t]o the extent practicable," trials are conducted in a manner such that "inadmissible evidence is not suggested to the jury by any means."  FED. R. EVID. 103(d).  They also aid courts in administering proceedings "fairly . . . to the end of ascertaining the truth and securing a just determination."  FED. R. EVID. 102.  Pretrial rulings thus "may generally be the better practice, for [they] permit[] counsel to make . . . necessary strategic determinations" before the jurors are in their seats.  *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980).  At the same time, given their limited purpose as a means for arguing why "evidence should or should not, *for evidentiary reasons*, be introduced at trial," *Williams v. Johnson*, 747 F.Supp.2d 10, 18 (D.D.C. 2010) (emphasis in original), motions *in limine* "should not be used to resolve factual disputes," nor as a "vehicle for a party to ask the Court to weigh the sufficiency of the evidence," *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (quotation marks and citation omitted).

### B.  Five Categories of Evidence Are Not Excludable Based on Defendant's Position at Summary Judgment

Plaintiff seeks to exclude the following five types of evidence with respect to plaintiff's DCHRA hostile work environment and his intentional infliction of emotional distress ("IIED") claims in Counts One and Eight, solely on the grounds that defendant purportedly conceded issues related to these evidentiary categories at summary judgment: (1) evidence "disputing or challenging the existence of a hostile work environment," Pl.'s MIL Mem. at 4–6; (2) evidence "disputing or challenging" that plaintiff "did the work that resulted in the closing of nine executive placements," *id.* at 14–15; (3) evidence "disputing or challenging" that "Brown's harassment of Mr. Feighan resulted in Mr. Feighan's constructive discharge," *id.* at 15–17; (4) evidence "disputing or challenging . . . that Mr. Brown's conduct towards Mr. Feighan was 'extreme or outrageous,'" *id.* at 28–30 (cleaned up); and (5) evidence pertaining to the remaining elements of plaintiff's IIED claim that Brown intentionally or recklessly caused plaintiff severe emotional distress, *id.* at 30.[4]   According to plaintiff, defendant should be barred from presenting evidence "disputing or challenging the existence of a hostile work environment" with respect to plaintiff's DCHRA claim because defendant did not contest that issue at summary judgment.  Pl.'s MIL Mem. at 4.  Similarly, plaintiff argues that defendant "did not challenge or dispute the fact that the abusive work environment to which Mr. Brown subjected Mr. Feighan based on sexual orientation resulted in Mr. Feighan's constructive discharge from" RSG.  *Id.* at 15–16.

The premise for excluding these categories of evidence is fatally flawed.  As explained, *supra* in Part I.A., defendant did not concede each of the elements of plaintiff's hostile work environment claim under the DCHRA by choosing not to contest at summary judgment certain

---

[4]      "To prevail on an IIED claim at summary judgment, plaintiff must show that a reasonable jury could find for him on each of these elements: '(1) extreme and outrageous conduct on the part of the defendant[], which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress.'"  *Feighan*, 2023 WL 2707520, at *18 (quoting *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 995 (D.C. Cir. 2014)).

claims or certain facts.  The concession plaintiff believes occurred did not, and thus plaintiff is not relieved of his burden to prove each element of each of his claims at trial.  Accordingly, plaintiff's motion to exclude these five categories of evidence is denied.

**C.  Ten Categories of Evidence Plaintiff Contends Are Excludable Under Rules 401, 403, or 404**

Plaintiff seeks to exclude ten categories of evidence, falling into the following three broad groupings, as irrelevant under Rule 401 or otherwise excludable under Rule 403 or Rule 404:

1.  Defendant's Treatment of Plaintiff, including—

    a.  evidence about how plaintiff "came to be supervised by Mr. Brown," Pl.'s MIL Mem. at 6–7;

    b.  evidence concerning whether defendant "fired Mr. Feighan, denied him a promotion, reassigned or transferred him, or reduced or raised his salary, or failed to take other adverse actions that have no relevance to this case," *id.* at 18–19; and

    c.  evidence concerning "which non-management employees Mr. Feighan did not report Mr. Brown's harassment to," *id.* at 26–27;

2.  Defendant's General Operations and Treatment of Other Employees, including—

    a.  evidence about how defendant "handled the COVID[-19] pandemic," *id.* at 7;

    b.  evidence about how "Bruce Brown treated employees other than" plaintiff and "[w]hat employees thought of Mr. Brown, or what their experiences were in working with him," *id.* at 7–10;

    c.  "general self-serving testimony" by defendant's "managers on the company's 'professional environment' and 'workplace culture' and the CEO's 'commitment to diversity,'" *id.* at 19–23; and

      d.   evidence about "what efforts [defendant] made to train Partners other than Mr. Brown on matters of discrimination and sexual harassment," *id.* at 23–25;

3.   Plaintiff's Professional and Personal Conduct and Character, including—

      a.   plaintiff's "private texts with his romantic partner concerning private matters between them, and texts where [plaintiff] references his private sex life," *id.* at 10–12;

      b.   evidence about whether plaintiff "smoked marijuana, or used drugs with co-workers during his employment," *id.* at 12; and

      c.   plaintiff's "post-employment documents to show at trial that he failed to 'mitigate' any post-employment losses," *id.* at 31.

In evaluating plaintiff's arguments for exclusion, the Court is mindful that "[r]elevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a particular case, and thus are generally not amenable to broad *per se* rules." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387–88 (2008); *see also* Advisory Committee's Notes on FED. RULE EVID. 401 ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case"). "The fundamental test for admitting evidence is its relevance: it must make 'the existence of any fact . . . more or less probable than it would be without the evidence.'" *United States v. Lewis*, 693 F.2d 189, 193 (D.C. Cir. 1982) (quoting FED. R. EVID. 401). In an employment discrimination case, the question of relevance of evidence "is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case. Applying Rule 403 to determine if evidence is prejudicial also requires a fact-intensive, context-specific inquiry." *Sprint/United Mgmt. Co.*, 552 U.S. at 388.

Plaintiff's arguments for excluding each of these categories of evidence under the Federal Rules of Evidence are evaluated in turn below.

### 1.   *Defendant's Treatment of Plaintiff*

#### a.   **Evidence Concerning How Plaintiff Came to Be Supervised by Brown is Admissible.**

Defendant's Statement of Undisputed Material Facts in support of its Motion for Summary Judgment ("SMF") asserted that, "Plaintiff initially was assigned to work with and be supervised by RSG employee Reece Breault.   Because Plaintiff had friction with Mr. Breault, he was reassigned to work directly for Brown."   Def.'s SMF ¶ 18, ECF No. 36-2.   Plaintiff now moves to exclude evidence concerning "who supervised Mr. Feighan before Mr. Brown, and whether Mr. Feighan got along or not with earlier supervisors" as irrelevant under Rule 401.   Pl.'s MIL Mem. at 6–7.   Defendant responds that this information is relevant and serves to rebut an allegation "that Brown supervised Feighan throughout his full one year of employment or that somehow the assignment to Brown was Brown's unilateral doing," and the evidence "is important because it shows the shortened time under which Feighan worked directly with Brown."   Def.'s Mem. Opp'n to Pl.'s MIL Mem. ("Def.'s Opp'n") at 9–10, ECF No. 62.

The evidence is plainly relevant for the reasons defendant persuasively supplies.   Evidence relating to the reasons for plaintiff's supervision to be assigned to Brown is relevant to show that plaintiff was not unilaterally reassigned by Brown for the latter's own harassment purposes and is consequently relevant to plaintiff's DCHRA claim.   *See Feighan,* 2023 WL 2707520, at *1 n.2 (observing that "plaintiff posits that the reassignment occurred so Brown 'could have direct, daily access to [plaintiff] to create a hostile work environment for [him.]'").   Furthermore, defendant is also correct that the evidence would show that plaintiff was not subject to Brown's supervision for

the full time he was employed at RSG.  Plaintiff's motion to exclude this evidence is therefore denied.

### b.  Evidence Concerning Plaintiff's Position and Pay Is Admissible.

Plaintiff seeks to exclude evidence about whether defendant "fired Mr. Feighan, denied him a promotion, reassigned or transferred him, or reduced or raised his salary, or failed to take other adverse actions that have no relevance to this case," contending that such information about his employment is not relevant to whether he suffered a "tangible employment action" under *Faragher-Ellerth*.  Pl.'s MIL Mem. at 18–19.  In his view, the only two tangible employment actions at issue are whether defendant (through Bruce Brown) denied plaintiff qualified bonuses, and whether his constructive discharge was precipitated by Brown denying him those bonuses, so any other "personnel actions" related to his employment are irrelevant.  *Id.* at 18.  Defendant disclaims any "intention of wasting time at trial discussing actions that are not claimed in this case" and urges that "the jury should be aware of Feighan's position and pay, including the fact that RSG did not change them during his employment."  Def.'s Opp'n at 15.  The Court agrees with defendant.

Plaintiff wants to focus the jury solely on his claims for unpaid bonuses and constructive discharge, but this blinkered approach would leave the jury without the full context necessary in assessing whether plaintiff suffered a tangible employment action.  The full context includes his position and salary, in all forms during his employment tenure at RSG.  Indeed, omitting this evidence might otherwise mislead the jury into thinking that the bonuses that Brown promised were plaintiff's only or principal source of income.  Accordingly, plaintiff's motion to exclude evidence concerning his salary at RSG is denied.

### c.  Evidence about Plaintiff Not Reporting Brown's Harassment to Non-Management Employees Is Admissible.

Defendant's Statement of Material Facts asserts that plaintiff never informed his co-workers about Brown's harassment and inappropriate conduct. *See* Def.'s SMF ¶ 40 ("Plaintiff never informed . . . [RSG employees] Paige Kuderka, Kandace Elam, Ava Talbott, Ryan Garikes, Dylan Wadsworth and Reece Breault that Brown had assaulted him or that he engaged in any other inappropriate conduct of a sexual nature, and he did not tell them that Brown mistreated him in any way because of his sexual orientation."); *see also id.* ¶ 39 (explaining that with the "[w]ith the exception of [ ] Kuderka, who held the position of Director at that time, none of those persons [in ¶ 40] was a manager of RSG").  Pointing to defendant's complaint procedure for reporting harassment, which provides that "[e]mployees . . . who feel that they have been harassed . . . should immediately report such conduct to their supervisor, to the CEO or any other member of management," *Feighan*, 2023 WL 2707520, at *5, plaintiff seeks to exclude evidence that he did not tell non-managers about Brown's conduct, arguing that such information is irrelevant to whether defendant was on notice of Brown's harassment,  Pl.'s MIL Mem. at 26–27.

Even if not required by the express terms of the company's complaint procedure, evidence that plaintiff told none of his coworkers of Brown's harassment is still relevant.  This evidence makes less likely that defendant's management was made aware of Brown's conduct and is thus relevant to plaintiff's negligence claims, as defendant argues.  *See* Def.'s Opp'n at 19–20. Plaintiff's decision not to tell his coworkers also is relevant to defendant's argument concerning plaintiff's "motivation behind the claims," namely "that he *purposely* kept his allegations of Brown's conduct a secret from RSG, so that he could deprive RSG of the opportunity to stop the conduct, in order to build a case against the company."  *Id.* at 20 (emphasis in original).  Evidence that plaintiff did not share with his coworkers any difficulties he believed he suffered from a hostile work environment may also be probative of, and tend to undercut, his claims of emotional distress.

Accordingly, defendant is entitled to present evidence to the jury of plaintiff's decision not to tell his coworkers about his alleged harassment by Brown.

### 2.   *Defendant's General Operations and Treatment of Other Employees*

#### a.   **Evidence about Defendant's Office Closure and Plaintiff's Remote Work During the COVID-19 Pandemic Is Admissible.**

Plaintiff wants to exclude evidence that RSG's offices were closed for fifteen months, from March 2020 to June 2021, in response to the COVID-19 pandemic, Def.'s SMF ¶ 20 ("On or about March 10, 2020, in response to the COVID-19 pandemic, all of RSG's employees were encouraged to work remotely, and all offices effectively were closed. The offices remained closed until June 2021, when they implemented a slow, non-mandatory return to the office."), and that plaintiff worked remotely in London, England with his partner for part of that time, *id.* ¶ 21, arguing that this information is not relevant to plaintiff's claims, Pl.'s MIL Mem. at 7.  Defendant, however, persuasively points out that this information is relevant to most of plaintiff's claims, including the issue of damages, because the duration of the offices' closure and the location from which plaintiff worked remotely demonstrates that plaintiff "and Brown were never physically in each other's presence during the last several months of Feighan's [ ] one year of employment" at RSG, and thus this evidence serves to "refute[] Feighan's claims that he suffered a hostile work environment or emotional distress or had actual factual grounds for a constructive discharge."  Def.'s Opp'n at 6. The timing and duration of Brown's harassment is plainly relevant to plaintiff's DCHRA and IIED claims, as well as the issue of compensatory and emotional distress damages, for the reasons defendant describes.  Plaintiff's motion to exclude evidence about when RSG's offices closed, and where plaintiff lived during the pandemic while employed at RSG, is accordingly denied.

#### b.   **Evidence Concerning How Brown Treated Employees Other Than Plaintiff Is Admissible.**

Plaintiff seeks to exclude evidence about how Brown treated other employees at RSG as irrelevant, under Rule 401, to the issue of how Brown treated plaintiff, and also confusing, under Rule 403, and inadmissible character evidence under Rule 404(a)(1) to show that "Brown is supposedly a great guy to all other people, so he could not have possibly acted the way he is accused of behaving with" plaintiff.  Pl.'s MIL Mem. at 8–10.  Defendant responds that "it intends to call some of Brown's subordinates/Feighan's co-workers who worked alongside Brown and Feighan in the D.C. office," and that testimony is "critical to RSG's defense that (a) RSG had no notice of Brown's alleged inappropriate conduct and (b) Brown did not single Feighan out and did not treat him differently than other employees."  Def.'s Opp'n at 7–8.

Rules 401, 404, and 403 do not bar admission of the testimony defendant seeks to introduce.  First, the evidence is plainly relevant for both reasons that defendant proffers.  Testimony from other individuals who were Brown's subordinates, demonstrating that Brown did not treat them in a "sexually inappropriate, discriminatory or similar manner," Def.'s Opp'n at 9, is relevant to plaintiff's claims in Counts Five and Six, that defendant negligently supervised and retained Brown, by tending to show that defendant lacked "either actual or constructive knowledge of Brown's sexual harassment of plaintiff."  *See Feighan*, 2023 WL 2707520, at *17–18; *see also Feighan*, 2023 WL 2707520, at *17  ("To establish a cause of action for negligent supervision, a plaintiff must show: that the employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer . . . failed to adequately supervise the employee.") (quoting *Blair v. D.C.*, 190 A.3d 212, 229 (D.C. 2018)).  Conversely, testimony that Brown treated "other employees in the same objectional manner" as plaintiff, Def.'s Opp'n at 7–8, is relevant to rebut plaintiff's DCHRA claim, which requires, in part, that plaintiff prove Brown's harassment "was based on" plaintiff's sexual orientation, *Lively*, 830 A.2d at 888

(quoting *Daka*, 771 A.2d at 92), by tending to show that Brown did not harass plaintiff because he is bisexual but acted the same way to all subordinates. *See Barnes v. Costle*, 561 F.2d 983, 990 n.55 (D.C. Cir. 1977) ("These situations, like that at bar, are to be distinguished from a bisexual superior who conditions the employment opportunities of a subordinate of either gender upon participation in a sexual affair. In the case of the bisexual superior, the insistence upon sexual favors would not constitute gender discrimination because it would apply to male and female employees alike.").

Moreover, testimony about how Brown treated other subordinates at RSG does not violate Rules 404(a)(1) and 404(b)(1) because defendant is not introducing the evidence to show Brown's propensity to be a good or bad supervisor, but rather to show defendant's lack of knowledge of Brown's conduct and Brown's lack of intent in discriminating against plaintiff based on his sexual orientation. *See* FED. R. EVID. 404(b)(2) (providing that evidence of other acts is admissible to prove, *inter alia*, "intent" or "knowledge").

Finally, plaintiff has not shown that the probative value of the testimony—for the reasons defendant has identified—is *substantially* outweighed by any danger of undue prejudice or misleading the jury given the significant relevance of the testimony described above. Plaintiff's motion to exclude testimony of how Brown treated employees other than plaintiff is thus denied.

### c. Evidence Concerning Defendant's Corporate Culture Is Generally Inadmissible.

Plaintiff moves to exclude general testimony from defendant's "managers on the company's 'professional environment' and 'workplace culture' and the CEO's 'commitment to diversity,'" Pl.'s MIL Mem. at 19, as irrelevant because the "*Faragher/Ellerth* defense . . . is focused entirely upon the specific hostile work environment at issue in the case" and the specific actions defendant took to prevent and correct harassment. *Id.* at 20–21. Defendant opposes this

17

portion of plaintiff's motion *in limine* and fronts plans "to call witnesses and introduce documents describing the company as diverse; committed to the principles of diversity, equity and inclusion; an acknowledged leader in diversity among its peers and led by a diverse group of executives," including "evidence that the group of employees reporting directly to Brown was comprised of individuals of different sexes, races and diverse sexual orientation" to respond to plaintiff's efforts "to paint a picture of RSG as some type of male-dominated, hedonistic fraternity house[.]"  Def.'s Opp'n at 16–17; *see also* Second Amended Joint Pretrial Statement at 21 (defendant identifying "Christen Morelli" as a witness who "will testify as to RSG's diverse, professional work culture and commitment to diversity and inclusion"), ECF No. 78.  Moreover, defendant asserts it "should be permitted to present evidence of its commitment to employing members of the LGBTQ+ community, since that is the type of discrimination alleged in this case" and to "refute[] any suggestion that the company did not take measures to prevent and correct discrimination and harassment of that nature."   Def.'s Opp'n at 17–18; *see also* Second Amended Joint Pretrial Statement at 18 (defendant identifying "Lindsay Angelillo" as a witness who will "testify as to RSG's commitment to diversity and inclusion . . . and its treatment of LGBTQ+ employees").  In other words, defendant may plan to turn this trial into an opportunity to showcase for the jury and public, through at least two of its employees called as witnesses, its positive attributes on diversity and professionalism.

Federal Rule of Evidence 404 bars the admissibility of character evidence "for the purpose of proving action in conformity therewith," *In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2003), by specifying that "a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait," FED. R. EVID. 404(a)(1).  Evidence of other "acts" "may be admissible for another purpose, such as proving

motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). "That means that, in practice, Rule 404(b) 'does not prohibit character evidence generally, only that which lacks any purpose but proving character.'" *United States v. McGill*, 815 F.3d 846, 879 (D.C. Cir. 2016) (quoting *United States v. Bowie,* 232 F.3d 923, 930 (D.C. Cir. 2000)).

Assuming *arguendo* that defendant's proffered testimony about its corporate character is relevant for its proffered purpose—that a company with a professional and diverse corporate environment committed to employing members of the LGBTQ+ community is more likely to have taken measures to prevent and correct discrimination and harassment against those in the LGBTQ+ community—using opinion testimony of defendant's general "good" corporate character to show that it acted in accordance with that trait in the case of Brown's harassment of plaintiff is improper under Rule 404(a), which proscribes the use of character evidence "for the purpose of proving action in conformity therewith[.]" *In re Sealed Case*, 352 F.3d at 412. Rule 404(a) was explicitly amended in December 2006 "to clarify that in a civil case[,] evidence of a person's character is never admissible to prove that the person acted in conformity with the character trait." FED. R. EVID. 404 (advisory committee's note to 2006 amendment). Given that defendant seeks to include testimony solely for the reasons proscribed by Rule 404(a), and defendant's corporate culture is not at issue in this case, defendant's corporate character evidence is inadmissible. *See In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prod. Liab. Litig.* ("*In re Davol*"), 510 F. Supp. 3d 538, 546 (S.D. Ohio 2020) ("Evidence of Defendants' charitable acts that are unrelated to the development of its devices is propensity evidence, attempting to induce the jury to conclude that

because Defendants have a good corporate character, it is unlikely that they behaved poorly in manufacturing and marketing the [product].").[5]

While Rule 404(a) specifies that "[e]vidence of a *person's* character or character trait is not admissible to prove that on a particular occasion the *person* acted in accordance with the character or trait[,]" FED. R. EVID. 404(a) (emphasis added); *see also* Rule 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a *person's* character in order to show that on a particular occasion the person acted in accordance with the character.") (emphasis added), no definition of "person" for the purposes of this rule is provided, and the advisory committee notes do not shed light on whether the Rule applies to corporations. *See Colley v. CSX Transportation, Inc.*, No. 1:07CV1175HSOJMR, 2009 WL 1515524 at *1 (S.D. Miss. May 27, 2009) ("It is not clear that Rule 404(b) applies to corporations."). Yet, notwithstanding this textual ambiguity, Rule 404 is regularly applied to corporations. *See, e.g.*, *In re Davol*, 510 F. Supp. 3d at 546 (applying Rule 404(a) to prevent admission of corporate character evidence); *Equal Emp. Opportunity Comm'n v. St. Joseph's/Candler Health Sys., Inc.*, No. CV420-112, 2022 WL 17978822, at *5 (S.D. Ga. Dec. 28, 2022) ("[St. Joseph's] cannot rely on evidence of its general 'good' corporate character, including its 'mission statement, and the general manner in which its mission statement guides its hiring and employment decisions,' to show it acted in conformity with that character when assessing McKever for the Safety/Security Officer role."); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.*, No. 14 C 1748, 2017 WL 2313201, at *2 (N.D. Ill. May 29, 2017) (applying Rule 404(b) to "alleged improper conduct" by

---

[5] To the extent that defendant asserts that plaintiff is putting its corporate character "at issue" by "paint[ing] a picture of RSG as some type of male-dominated, hedonistic fraternity house," Def.'s Opp'n at 17, defendant is mistaken. Plaintiff also may not proffer evidence or testimony to show that defendant has a "bad" corporate character because such evidence would also be proscribed under Rule 404(a). To the extent that plaintiff offers evidence of specific acts, such as testimony that plaintiff was told that "RSG's CEO sat naked in a hot tub with a client," *id.*, that evidence is not character evidence, but rather evidence of "other acts" that must satisfy the requirements outlined under Rule 404(b).

20

the defendant); *In re: Tylenol (Acetaminophen) Mktg.*, No. 2436, 2016 WL 3125428, at *11 (E.D. Pa. June 3, 2016) ("[T]he evidence the plaintiff is seeking to exclude—that of how the defendants are 'good corporate citizens' by providing scholarships or making charitable contributions—would not be relevant to this case unless the plaintiff offers evidence to the contrary."); *Hausman v. Holland Am. Line-USA*, No. 13CV00937 BJR, 2015 WL 11234151, at *4–5 (W.D. Wash. Aug. 4, 2015) (applying Rule 404(b) to "prior bad acts" taken by corporate defendants); *Logan for Gumm v. Cooper Tire & Rubber Co.*, No. CV 10-3-KSF, 2011 WL 13238546, at *1 (E.D. Ky. Aug. 10, 2011) (similar).

Applying Rule 404 to corporations is consistent with the interests served by the general bar on admissibility of character evidence since such evidence "tends to distract the trier of fact from the main question of what actually happened on the particular occasion.  It subtly permits the trier of fact to reward the good man to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." FED. R. EVID. 404 (advisory committee's note to 1972 proposed rules); *see also United States v. Foskey*, 636 F.2d 517, 523 (D.C. Cir. 1980) ("It is fundamental to American jurisprudence that 'a defendant must be tried for what he did, not for who he is.'") (quoting *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir. 1977)); Geoffrey M. Stannard, Note, *The Liar and the Loophole: Corporate Character Evidence and Impeachment*, 81 BROOK. L. REV. 239, 245 (2015) (arguing that Rule 404's ban on the majority of propensity character evidence applies to corporations because "[w]hen character evidence is defined with respect to its function, corporations seem to fall within the definition's purview").  Admitting evidence of defendant's corporate character, in the form defendant promotes to be its commitment to professionalism, diversity, and the LGBTQ+ community, will confuse and potentially lull the jury into thinking defendant acted in accordance with those corporate culture traits when

supervising Brown.  Applying Rule 404 generally to proscribe admission of defendant's corporate character evidence in these circumstances thus aligns with the purposes served by the rule.[6]

In any event, even if Rule 404 were inapplicable to corporations, the corporate character evidence defendant would like to admit would be barred under Rule 403 because its minimal probative value is substantially outweighed by the potential confusion by distracting the jury from the specific facts at issue and potential undue prejudice should the jury rely on the propensity inference discussed above.  For these reasons, plaintiff's request to exclude this general evidence of defendant's corporate character is granted.

### d. Evidence about Defendant's Efforts to Train Partners on Matters of Discrimination and Sexual Harassment Is Admissible.

Relatedly, plaintiff moves to exclude testimony of defendant's partners "*other than Mr. Brown* to testify on how *they* supposedly were trained by [RSG] on sexual harassment and discrimination in the workplace" because "[h]ow *other* Partners . . . were trained to avoid sexually harassing *their* subordinates is not probative of the *Faragher/Ellerth* question before the jury: namely, whether [RSG] *in this specific case* effectively trained *the harasser*—Mr. Brown— to refrain from sexually harassing his subordinates, including Mr. Feighan." Pl.'s MIL Mem. at 24 (emphases in original).  Defendant characterizes plaintiff's argument as "ludicrous" because "[t]o limit this evidence to Brown allows Feighan to create an impression that no one else in Brown's

---

[6]    Defendant counters that "[p]rovided that the evidence in question relates to discrimination and harassment, courts have allowed circumstantial evidence of a company's culture in harassment cases."  Def.'s Opp'n at 18 (citing *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 333 (3rd Cir. 1995) and *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 641 (3d Cir. 1993)).  Those two non-binding Third Circuit cases relied upon by defendant are inapposite here since both involved claims of disparate discrimination based on a protected class—not hostile work environment claims.  *See Brewer*, 72 F.3d at 333 (evaluating a discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.*); *Josey*, 006 F.2d at 635 ("Ted Josey filed this suit against his former employer . . . alleging he was discharged because of his race in violation of Title VII").  Corporate culture evidence was found to be relevant in those cases to show circumstantial evidence of the company's intent behind an employment decision, a permissible use of character evidence under Rule 404(b), while the evidence here is being used for the purpose proscribed by Rule 404(a).

group knew what to do if they saw or heard something that was offensive and against the policy,"
when the "evidence shows RSG's commitment to combatting discrimination and harassment in
the workplace, which is proper."  Def.'s Opp'n at 18.

Defendant's training policies to prevent and correct harassment are plainly relevant in this
case.  Indeed, the first element of the *Faragher-Ellerth* affirmative defense is that "defendant must
show that it 'took reasonable care both to prevent *and* correct harassment.'"  *Feighan*, 2023 WL
2707520, at *15 (quoting *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1314 (11th Cir.
2001) (emphasis in original)).  Accordingly, defendant must be allowed to have a company
employee (or employees) testify about its policies prohibiting and remediating instances of
harassment and discrimination, how partners were trained on those policies (as a general matter),
and the frequency of those trainings.  That testimony may be given by, for example, an RSG partner,
like Maryanne Martire, who oversaw HR matters at least when plaintiff worked at the company.
*Id.* at *5.  Defendant also correctly points out that other partners' training experiences "is relevant
to Feighan's claim for punitive damages, since it shows a lack of malice."  Def.'s Opp'n at 18.
Indeed, such efforts to train and prevent harassment by its partners would tend to show that
defendant did not act with malice.  *See Arthur Young & Co.*, 631 A.2d at 372 (explaining that "[a]
showing of evil motive or actual malice is also required" in a claim for punitive damages under
the DCHRA); *see also Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1364 (10th Cir. 1987)
(affirming admission of Rule 404(b) evidence because the evidence was probative of whether the
defendant had "engaged in a pattern of conduct evincing conscious or reckless disregard for the
rights of private property owners" and "to support the plaintiffs' claims for . . . punitive damages");
*Peshlakai v. Ruiz*, 39 F. Supp. 3d 1264, 1338 (D.N.M. 2014) (admitting Rule 404(b) evidence "for
the permissible purpose of showing [the defendant's] state of mind for punitive damages").  Thus,

plaintiff's motion to exclude evidence about defendant's efforts to train partners on matters of discrimination and sexual harassment is denied.

### 3. *Plaintiff's Professional and Personal Conduct*

#### a. **Plaintiff's Private Texts with His Romantic Partner, and Texts Referencing His Sex Life, Are Generally Admissible.**

Plaintiff seeks to exclude 284 pages of communications between plaintiff and his then romantic partner and between plaintiff and others referencing his sex life, during and after plaintiff's employment with RSG. Plaintiff argues that the texts are not relevant to the claims at issue because they "contain purely private communications between Mr. Feighan and [his then-partner] about personal matters between them, such as their relationship, their love for each other, getting married, traveling together, going on vacations, getting tattoos, sexual topics, their respective parents, and other privately discussed matters typical of romantic couples," and texts with others that make "passing reference to his sex life." Pl.'s MIL Mem. at 10–11. Even if relevant, plaintiff argues that admission of these communications is barred under Rule 403 because the potential prejudice of their admission far outweighs their probative value. *Id.* at 11. Defendant counters that both sets of communications between plaintiff and his then-romantic partner and with others concerning his sex life "are relevant to impeach Feighan's evidence and testimony regarding his claim for emotional distress damages" because plaintiff put these topics at issue by alleging that "he has suffered severe emotional distress relating to all aspects of his life, including his romantic life with partners." Def.'s Opp'n at 10.

Defendant is right that plaintiff's private communications with his then-partner and communications about his sex life are relevant because plaintiff has put those topics at issue in his claims for emotional distress damages. The Amended Complaint alleges that, due to the hostile work environment he suffered through defendant's fault, plaintiff "began to suffer from frequent

panic attacks whenever he attempted intimacy with his romantic partners," that he was "unable to achieve, or maintain, erections," and that he suffered a loss of sex drive.  Am. Compl. ¶¶ 179–80; *see also id.* ¶ 181 (explaining that because of Brown's conduct, plaintiff has "no sex drive" and suffers from "Post Traumatic Stress Disorder and Major Depressive Disorder").  Furthermore, plaintiff's expert, Dr. Ryan Shugarman, observes in his report that Brown's "communications themselves, and the resultantly added workload, contributed significantly to the onset in March 2020 of sexual performance issues with [Feighan's] partner at the time, which ultimately led to the relationship's dissolution in September 2020."  Def.'s Opp'n, Ex. 3, ECF No. 62-3, December 7, 2020 Report of Ryan S. Shugarman at 2.  According to defendant, plaintiff's communications during and after his employment with RSG show that plaintiff's romantic and sex life was not impeded by Brown's conduct and thus are relevant to refute plaintiff's evidence that he suffered from sexual and romantic difficulties due to Brown's conduct and to impeach plaintiff's testimony supporting that evidence.  Def.'s Opp'n at 10–11; *see also* FED. R. EVID. 405(b) ("When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct."); FED. R. EVID. 608(b)(1) (allowing, on cross examination, inquiry into "specific instances of a witness's conduct . . . if they are probative of the character for truthfulness or untruthfulness of . . . the witness").

In reply, plaintiff argues that "that the messages at issue comprise 284 pages of communications, the vast majority of which" are not relevant to plaintiff's claims of sexual and romantic difficulties.  Pl.'s Reply Supp. Mot. *in Limine* at 10, ECF No. 66.  Yet, defendant is not seeking the inclusion of all of plaintiff's communications with his romantic partner and each of his communications about his sex life.  Defendant is merely opposing plaintiff's motion to exclude

that entire category of evidence.  As defendant explains, "[w]hether and how much of this evidence the Court should admit depends in part on the evidence that Feighan introduces as to his specific alleged emotional distress."  Def.'s Opp'n at 11.  The specific communications that defendant intends to admit at trial must be evaluated for relevance and potential prejudice under Rules 401 and 403 at trial after plaintiff has presented his evidence in support of his claim for emotional distress.  Given that plaintiff has put his sexual and romantic difficulties at issue in his claim for emotional distress and the relevance these text communications may have to issues that may surface at trial, his motion for a blanket exclusion of these communications is premature and therefore denied.

### b. Evidence about Plaintiff's Use of Illicit Drugs and Alcohol at Defendant's Work Events Is Admissible, But Private Use of Such Substances Is Otherwise Inadmissible.

Plaintiff seeks to exclude "some texts he had with others" referencing "the subject of whether he smoked marijuana, or participated in drug taking with co-workers during the time of his employment with" defendant, arguing that the texts are irrelevant to any claims or defenses at issue and will "mislead[] the jury into believing the drug use has some relevance to the jury's task, when it has none."  Pl.'s MIL Mem. at 12.  Defendant agrees—but only if plaintiff similarly agrees to an order that "precludes Feighan from offering evidence of Brown's drug use."  Def.'s Opp'n at 12.  Otherwise, defendant objects that plaintiff "cannot have it both ways," stating "he cannot be free to offer testimony about Brown's drug use . . . without providing [defendant] the opportunity to offer similar testimony about Feighan's own voluntary, willing use of drugs, including his numerous texts to Brown about the same."  *Id.*  Unsurprisingly, plaintiff "cannot agree to this" tit-for-tat condition because "there is a probative difference between evidence of an individual's purely private drug/alcohol use . . . and evidence of drug/alcohol use that the company

actively and openly encouraged and condoned as part of the workplace culture in which Mr. Brown and Mr. Feighan worked and provides the work-related context in which Mr. Brown's harassment of Feighan occurred." Pl.'s Reply at 11; *see also id.* at 11 ("The evidence will also show Mr. Brown's drug and alcohol use specifically in the context of conducting [defendant's] business and harassment of Feighan, including Mr. Brown paying for marijuana for his subordinates (including Mr. Feighan) on a work trip, and Mr. Brown imbibing alcohol during work calls.").

Plaintiff is correct that evidence of Brown's illicit drug and alcohol use at the company and at work events, as well as defendant's alleged actions condoning such use, is relevant to plaintiff's claims because that evidence provides work-related context for Brown's harassment and tends to make less probable that defendant took sufficient efforts to prevent workplace misconduct and harassment. By the same token, evidence of plaintiff's consumption of alcohol and use of illicit drugs at defendant's workplace and work-related events, as well as reference to the same in interactions with coworkers and supervisors, is also relevant to assessing whether defendant took sufficient steps to correct and prevent harassment—and, arguably, makes more likely for the jury to think that because plaintiff, too, was openly participating in alcohol and illicit drug use at workplace sponsored events and in interactions with coworkers and supervisors, Brown's use of drugs and alcohol during work events was condoned and encouraged. By contrast, evidence of plaintiff's "purely private" use of illicit drugs and alcohol outside of the workplace is not relevant to Brown's harassment or defendant's policies for preventing and correcting instances of harassment in the workplace.

Accordingly, evidence of Brown and plaintiff's use of illicit drugs and alcohol during defendant's work events and references to the same in interactions with coworkers and supervisors

is admissible, but evidence of plaintiff's similar "purely private" conduct outside defendant's workplace or work-related events is generally not admissible.

### c.   "Post-Employment Documents" Are Not Relevant to Show Plaintiff Failed to Mitigate Damages.

Plaintiff argues that his "post-employment documents," including his "employment contracts," "personnel file," and "final paystub" with a company he worked at after his employment with defendant ended, are irrelevant and should be excluded.  Pl.'s MIL Mem. at 31. Certainly, were plaintiff "seeking post-employment economic losses (such as backpay and front pay) and whether the plaintiff mitigated those losses (e.g., by diligently looking for new work and new sources of income after separating from the defendant-employer)," *id*., these records would be relevant but not when, as here, plaintiff is not making such claims.  Up to this point, defendant agrees, explaining that the post-employment documents will not be used "to show mitigation of economic losses."  Def.'s Opp'n at 21.  Yet, defendant "reserves the right to introduce evidence of Feighan's post-RSG employment to refute his claim for emotional distress damages, since the employment that he has had and the earnings that he has received since he left RSG relate to his ability to work, to interact with people and to earn income."  *Id*.  Plaintiff does not contest the relevance of his post-employment documents as to his claim of emotional distress and related damages.  *See generally* Pl.'s Reply.

Accordingly, defendant may not use plaintiff's post-employment documents to show plaintiff failed to mitigate damages, but such evidence may be admissible for another purpose, such as refuting his claim for emotional distress damages.

### D.  Plaintiff's Settlement Agreement and Related Communications with Bruce Brown Are Admissible.

Finally, plaintiff moves to exclude his settlement agreement and related communications with Bruce Brown, Pl.'s MIL Mem. at 31–35, under Federal Rule of Evidence 408(a), which bars admission of settlement agreements "compromising or attempting to compromise the claim" and "conduct or a statement made during compromise negotiations about the claim" when admission is sought  "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction," FED. R. EVID. 408(a).  Defendant has indicated an intent to use this settlement agreement and related communications showing that plaintiff conditioned the settlement on Brown "appear[ing] at trial to testify in Feighan's case in chief," to impeach Brown for bias when plaintiff calls Brown to testify.  Def.'s Sealed Mem. Supp. Def.'s Mot. *in Limine* ("Def.'s MIL Mem.") at 4, ECF No. 56-1.

The purpose for which defendant intends to use the settlement agreement and related communications is permissible under Rule 408(b), which provides that evidence of a settlement agreement and supporting communications may be admitted when relevant "for another purpose, such as proving a witness's bias or prejudice."  FED. R. EVID. 408(b).  The settlement agreement itself and settlement-related communications indicating that Brown was required to testify at trial as a condition of settlement are thus both significantly probative to show bias on Brown's part. *See U.S., ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, No. CIV A 95-1231 RCL, 2007 WL 851868, at *1 (D.D.C. Mar. 14, 2007) (admitting settlement agreement evidence "[o]n the limited issue of witness bias"); *Vargas v. Michaels Stores, Inc.*, No. 8:16-CV-1949-T-33JSS, 2017 WL 3723655, at *2 (M.D. Fla. Aug. 29, 2017) (denying motion to exclude "any evidence regarding settlement negotiations" because the evidence could be used to show witness bias).

Even if Rule 408(b) authorizes admission, plaintiff contends that exclusion is nonetheless warranted so that defendant cannot use evidence of the settlement agreement and related

29

communications to "prove or disprove the validity or amount of a disputed claim," Pl.'s MIL Mem. at 34, and to establish that plaintiff has already received substantial compensation for his injuries from Brown, rendering any additional compensation from defendant unnecessary, *see id.* Evidence of settlement agreements has been excluded to avoid just the concerns articulated by plaintiff, but only when the evidence was plainly not being admitted for a purpose expressly permitted in Rule 408(b). *See, e.g.*, *Rhoads Indus., Inc. v. Shoreline Found., Inc.*, No. CV 15-921, 2022 WL 4021766, at *14 (E.D. Pa. Sept. 2, 2022) ("Despite Defendants' insistence this information is necessary to their mitigation defense, we do not see how this justification could validly constitute 'another purpose' under Rule 408[(b)][.]"); *Sweetwater Invs., LLC v. Sweetwater Apartments Loan LLC*, No. 1:10-CV-223-WKW, 2011 WL 13362845, at *2 (M.D. Ala. Sept. 27, 2011) ("[I]t is difficult to understand how Defendants are not seeking to introduce evidence of settlement negotiations (and no argument has been made that the correspondence at issue does not contain offers of compromise) to mitigate the 'amount' of any possible jury award by informing the jurors that Plaintiff refused to release Regions Bank from liability and refused to agree to a rescission of the Contract."); *Young v. Verson Allsteel Press Co.*, 539 F. Supp. 193, 195 (E.D. Pa. 1982) ("It is difficult to understand how Federal is not, by its own admission, seeking to introduce such evidence to mitigate the amount of any possible jury award by informing the jurors that plaintiff has already received a measure of compensation for his injuries. Thus, . . . Federal's argument is merely an attempt to circumvent the express prohibition of Rule 408."). Here, by contrast, defendant has offered a valid reason under Rule 408(b) to admit the settlement agreement: When Brown is called to testify, the agreement and related communications may tend to show the deal struck was conditioned on his testimony on behalf of plaintiff at trial and, further, that such testimony was anticipated to be favorably biased for plaintiff.

At the same time, the threat of undue prejudice against plaintiff looms large.  Should the jury hear the monetary amount that Brown settled on plaintiff, they may be tempted to conclude that plaintiff has already received just compensation.  To balance defendant's need for settlement agreement evidence to evince Brown's bias with the need to avoid undue prejudice to plaintiff under Rule 403, the settlement agreement between plaintiff and Brown and supporting communications that evince Brown's potential bias will not be excluded, but the financial terms set out in the settlement agreement must be withheld and hidden from the jury.[7]

## III.   CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment as a matter of law on Count One of the Amended Complaint is DENIED, and plaintiff's pretrial motion in *limine* is GRANTED IN PART and DENIED IN PART.  Specifically, plaintiff's motion in *limine* to exclude evidence and testimony is GRANTED as to plaintiff's alcohol and illicit drug use outside the context of his employment with defendant, defendant's generalized workplace culture and commitment to diversity, and plaintiff's post-employment documents to show that he failed to mitigate any post-employment losses, but otherwise DENIED.

An order consistent with this opinion will be filed contemporaneously.

Date:  July 19, 2023

_____
**BERYL A. HOWELL**
United States District Court Judge

---

[7]      Defendant has filed a separate motion *in limine* to admit evidence of plaintiff's settlement agreement with Bruce Brown and related settlement communications.  Def.'s Sealed Mot. in *Limine* to Admit Evidence of Pl.'s Settlement Agreement with Bruce Brown ("Def.'s Sealed Mot."), ECF No. 56.  Given denial of plaintiff's dueling request to exclude this settlement agreement-related evidence in this Memorandum Opinion, the issues raised in defendant's Sealed Motion are resolved and defendant's Sealed Motion will be denied as moot.